## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **JAMES EAVES,** | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 06-531-KAJ |
| | : | |
| **THOMAS CARROLL**, Warden | : | |
| and **CARL C. DANBERG**, Attorney | : | |
| General for the State of Delaware, | : | |
| | : | |
| Respondents. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

On April 15, 2001, county police officers arrived at 204 Dewey Court, Stoneybrook, in Claymont, Delaware, responding to a report of an unresponsive child. Police saw two year old Elijah Johnson in an upstairs bedroom; the child did not respond and he was not breathing. Elijah was pronounced dead that morning upon his arrival at the hospital. An autopsy by the Medical Examiner revealed that the child had bled to death from injuries to his liver and aorta. Another child in the house, Lance Leatherberry, was also found by police. Lance too had been struck, causing minor injuries to his mouth and chest. (B3, 8-10, 20).[1] The boys' mother told detectives that she had gone the previous evening for 20 minutes, leaving James Eaves with the children. When she left, the two boys had been fine. On her return, she discovered Lance had a missing tooth and a bloody mouth; Elijah seemed to be asleep. Eaves told her that the two boys had run into each other, knocking

---

[1] "B" refers to the appendix to the State's answering brief filed in the state supreme court by

Lance's tooth out from the force of the collision. The mother checked on both boys about 1 a.m., and they both appeared to be fine. At about 8 a.m., when she went to awaken Elijah, he was unresponsive and not breathing. She then ran to a neighbor's house to call for an ambulance. (B11-15).

Police questioned Eaves that day. Eaves was the boyfriend of the mother of the two children, and he was babysitting the two the evening and night of April 14. Eaves confessed to striking both Elijah and Lance because the boys would not stop crying. (B3-4, 16-19, 22). He was indicted in July 2001, charged with murder by abuse or neglect in the first degree for the death of Elijah Johnson and with second degree assault for the injury to Lance Leatherberry. (B33). In March 2002, Eaves agreed to plead guilty to the homicide charge. In exchange, the prosecution agreed to dismiss the assault charge. In addition, the prosecution agreed with the defense that a 20 year sentence would be appropriate. (B34-35).

In the plea colloquy, both the prosecutor and Eaves' attorney recited the terms of the agreement. (B36). The Superior Court judge, however, made it clear that the sentencing recommendation was not binding on the court. (B36). On the guilty plea form, Eaves had denied that anyone had promised him what his sentence would be. (B34). He also denied that he had been promised anything not stated in the plea agreement. (B34). When asked those questions during the plea colloquy, Eaves' answers were consistent with his statement on the plea form. (B37). Finally, Eaves told the judge he understood that he could be sentenced to a prison term ranging from 15 years to life. (B37). Eaves was sentenced on June 7, 2002, to 40 years imprisonment, suspended after 30 years imprisonment for 10 years probation. (B39).

---

prosecutors in Delaware Supreme Court No. 22, 2006.

On July 27, 2005, Eaves filed a motion for state post-conviction relief. (B43-48). According to Eaves, the judge had violated the plea agreement by sentencing him to 30 years imprisonment; defense counsel had been ineffective in various regards to relation to the 30 year sentence; and the prosecutor had violated the plea agreement by not ensuring that Eaves had received only a 20 year prison term. (B46-47). After ordering the transcript of the plea colloquy to be prepared,[2] the judge denied Eaves' motion. (B49). According to the judge, Eaves had been told that the sentencing recommendation by the parties did not bind the judge. Moreover, Eaves had been told that his maximum sentence exposure was life imprisonment.

On Eaves' appeal, the state supreme court affirmed the Superior Court's decision. *See Eaves v. State*, 2006 WL 1911098 (Del. July 10, 2006). According to the Supreme Court, Eaves' July 2005 motion for post-conviction relief was untimely under Superior Court Criminal Rule 61(i)(1). Eaves then filed the instant petition for federal habeas relief. D.I. 1.

Liberally reading the petition, Eaves presents two bases for federal relief in his petition. First, he complains that the trial judge and prosecutor violated the plea agreement which recommended a sentence of 20 years imprisonment. D.I. 1 at 2, 6. Second, he alleges ineffective assistance of counsel, asserting several bases in support thereof: 1) defense counsel's failure to object to the 30 year sentence; 2) defense counsel's failure to move to withdraw Eaves' plea; 3) defense counsel coerced Eaves into accepting the plea agreement; 4) defense counsel failed to advise Eaves of his right to appeal and to apply for state post-conviction relief. D.I. 1, at 3-15. The claims were presented in Eaves' 2006 appeal to the state supreme court, and he has accordingly exhausted state remedies.

---

[2] Del. Super. Ct. Crim. R. 61(d)(3).

Eaves is not entitled to relief because the claims presented in his petition are untimely under 28 U.S.C. § 2244(d). Because Eaves' petition was filed in August 2006, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law by the President on April 24, 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 802-03 (D. Del. 1997). By the terms of § 2244(d)(1), as amended by AEDPA, a federal habeas petitioner must file the petition within one year of the date on which the state court judgment became final upon the conclusion of direct review. *See* 28 U.S.C. § 2244(d)(1)(A); *Calderon v. Ashmus*, 523 U.S. 740, 742-43 (1998). Eaves does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. § 2244(d)(1)(B)-(D) are applicable. Thus, the one-year period of limitations began to run when his conviction became final under § 2244(d)(1)(A). *See, e.g., Gibbs v. Carroll*, 2004 WL 1376588, *2 (D. Del. June 17, 2004). Eaves did not appeal his conviction or sentence, although he had thirty days to do so. *See* 10 Del. C. § 147; Del. Supr. Ct. R. 6. His judgment, therefore, became final on July 8, 2002. *See, e.g., Lindsey v. Carroll*, 421 F. Supp.2d 806, 809 (D. Del. 2006) (citations omitted). Eaves thus had until July 9, 2003 to file his federal habeas petition without running afoul of § 2244(d). *See, e.g., Samuel v. Carroll*, 2004 WL 1368845 (D. Del. June 9, 2004); *Morales v. Carroll*, 2004 WL 1043723 (D. Del. Apr. 28, 2004). Eaves' petition, dated August 28, 2006, is untimely and must be dismissed, unless the time period can be statutorily or equitably tolled.[3] *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

---

[3] The petition is dated August 28, 2006. D.I. 1, at 15. That is the presumptive date on which Eaves gave the petition to prison officials for mailing. In turn, that date is the date the petition is deemed filed. *See, e.g., Woods v. Kearney*, 215 F. Supp.2d 458, 460 (D. Del. 2002).

4

In turn, the tolling mechanism of § 2244(d)(1) does not save Eaves' petition from the running of the limitations period. *See* 28 U.S.C. § 2244(d)(2). When applicable, § 2244(d)(2) tolls the one-year period of § 2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. In this case, however, § 2244(d)(2) does not apply. Eaves did not file his postconviction motion until after the time to file his federal habeas petition had expired. As such, his postconviction motion did not toll anything. Moreover, when he did finally file his postconviction motion in Superior Court, the Delaware Supreme Court found that it was untimely and, therefore, improperly filed. *See Eaves*, 2006 WL 1911098, at ¶ 3. As this Court has recognized, it "must look to state law governing when a petition for collateral relief is properly filed." *Woods v. Kearney*, 215 F. Supp.2d 458, 4631 (D. Del. 2000) (*citing Fahy v. Horn*, 240 F.3d 239, 243-44 (3d Cir. 2001)). Accordingly, because Eaves' postconviction motion was improperly filed, it would not have operated to toll the statutory period of § 2244(d)(1). *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005); *Satterfield v. Johnson*, 434 F.3d 185, 192 (3d Cir. 2006);

The Superior Court docket also shows that Eaves filed a motion to modify or reduce his sentence on August 19, 2002.[4] Superior Court Docket Item 22 in case 0104009314. His motion was denied on September 5, 2002. Superior Court Docket Item 23 in case 0104009314. Eaves did not appeal the court's denial. Assuming for the moment that a motion to reduce the sentence triggers the tolling provision of § 2244(d)(2),[5] the limitations period was tolled from August 19, 2002, when the motion was filed, until October 7, 2002, when the time for Eaves to appeal the

---

[4] Del. Super. Ct. Crim. R. 35(b).

[5] This is the question presented in *Hartmann v. Carroll*, No. 04-4550, currently pending before the Third Circuit.

5

Superior Court's decision to the Delaware Supreme Court expired. At this point, 43 days of the one year period had run.[6]

Eaves then filed additional motions to modify his sentence. Superior Court Docket Items 25, 28, 31. The Superior Court denied each of his motions. Superior Court Docket Items 27, 32. Under state law, repetitive motions for reduction or modification of a sentence are forbidden; Rule 35(b) itself makes that clear. *See Cochran v. State*, 2005 WL 3357633, *1 (Del. December 8, 2005) ("assuming that [defendant's] "mental illness" would have excused his untimely motion, the Superior Court was, nevertheless, compelled to deny the motion as repetitive.") (citation omitted); *Morrison v. State*, 2004 WL 716773, *2 (Del. March 24, 2004) (same); *Hollis v. State*, 2003 WL 21241393, *1 (Del. May 27, 2003). Thus, because state law precludes repetitive motions under Rule 35(b), without regard to the merits of the motion, any repetitive motion to reduce or modify the sentence is not "properly filed" within the terms of § 2244(d)(2). *See Pace*, 544 U.S. at 414; *Satterfield*, 434 F.3d at 192. As a result, these additional motions filed by Eaves do not toll the limitations period.

Of course, as the Court has repeatedly noted, the limitation period might be subject to equitable tolling. *See, e.g., Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001) (describing rule). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Here, Eaves has failed to allege or demonstrate any extraordinary circumstances that prevented him from filing his petition with the Court in a timely

---

[6] The time for Eaves to appeal his conviction expired on July 8, 2002. He filed his motion to reduce or modify his sentence on August 19, 2002. Accordingly, 43 days had expired in the interim.

manner. Eaves contends that § 2244(d)(2) saves his petition from being barred as untimely because he "was awaiting the outcome of the [motion for postconviction relief under Delaware Superior Court Rule of Criminal Procedure] 61 appeal from the Supreme Court of the State of Delaware." D.I. 1, at 14. This argument, however, fails to account for § 2244(d)(1)'s one year limitation period. Eaves did not apply for postconviction relief until July 27, 2005, more than three years after his conviction had become final. His application for federal habeas relief is clearly untimely in light of § 2244(d)(1)'s one year limitation. Accordingly, there is no basis upon which the petition can be saved by virtue of the equitable tolling doctrine.

Moreover, Eaves' claims are procedurally defaulted. Even though Eaves' claims are exhausted, this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989). Eaves did not comply with state procedural requirements pertaining to the claims he raises in his petition. Under Superior Court Criminal Rule 61(i)(1), a defendant is time barred from bringing a motion for postconviction relief more than three years after the judgment becomes final. The Delaware Supreme Court expressly noted that Eaves' petition was untimely under the rule and found no exception to the time bar applicable to Eaves' case. *See Eaves*, 2006 WL 1911098, at ¶ 3. Eaves, having failed to comply with Criminal Rule 61(i)(1), failed to comply with the relevant state procedural requirements. *See Lawrie*, 9 F. Supp.2d at 451.

Accordingly, federal habeas review of Eaves' claim is barred unless he establishes cause for his procedural default in state courts and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992); *Dawson*, 988 F.

7

Supp. at 804-05; *Johnson v. Ellingsworth*, 783 F. Supp. 215, 218-21 (D. Del. 1992); *Browne v.*

*Carroll*, 2006 WL 167549, at *11 (D. Del. Jan. 24, 2006). To demonstrate cause for a procedural

default, a petitioner must show that "some objective factor external to the defense" precluded his

compliance with state procedural rule. *McCleskey v. Zant*, 499 U.S. 47, 493 (1991); *Murray v.*

*Carrier*, 477 U.S. 478, 487 (1986); *Dawson*, 988 F. Supp. At 805. To establish prejudice under

the cause and prejudice standard, a petitioner must show "not merely that the errors at...trial

created a possibility of prejudice, but that they worked to [her] actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477

U.S. at 493-94 (*quoting United States v. Frady*, 456 U.S. 152, 179 (1982)). *See also Dawson*,

988 F. Supp. at 804-05 (*quoting Carrier*).

Here, Eaves attempts to explain the untimeliness of his application for postconviction

relief by claiming ineffective assistance of counsel because he was not told of the time

constraints on filing a direct appeal or a motion for postconviction relief. *See* D.I. 1, at 11(a).

Eaves has simply failed to articulate any cause for his procedural default. Though Eaves claims

that he was not advised of his appellate rights, the trial judge specifically informed Eaves that

one of the rights he was forfeiting by pleading guilty was the right to appeal. (B37). And the

absence of a direct appeal is not the procedural flaw in Eaves' case; instead, it is Eaves' failure to

comply with the three year limitations period contained in Criminal Rule 61(i)(1). Counsel's

advice or assistance in that context is irrelevant. *See Coleman v. Thompson*, 501 U.S. 722, 752

(1991); *Floyd v. State*, 1992 WL 183086, at *1 (Del. July 13, 1992) (*citing Ross v. Moffitt*, 417

U.S. 600 (1974); *Shipley v. State*, 570 A.2d 1159, 1166 (Del. 1990) ("The right to *effective*

assistance of counsel, however, is dependent on the right to counsel itself.") (citation and

8

emphasis omitted)).  And in any event, the premise of Eaves' claims -- whether the plea

agreement was binding on the trial judge -- has no basis in fact or law.  During his plea colloquy,

Eaves was clearly informed that the sentencing recommendation was not binding on the court, a

fact that Eaves himself readily acknowledged.  (B49).  *See Cassidy v. Redman*, Civ.Act.No. 89-

571-JJF (D. Del. January 7, 1992) (*citing Jones v. Petrovsky*, 631 F.2d 595, 597 (8th Cir. 1980));

*Adams v. State*, 1991 Del. LEXIS 66, *5-6 (Del. February 15, 1991) (citations omitted).

<u>Conclusion</u>

Based upon the Superior Court docket sheet, it appears that the transcripts of Eaves' plea

colloquy and sentencing have been prepared.  In the event that the Court directs the production of

any transcript, respondents cannot state with specificity when such transcript would be available.

However, respondents reasonably anticipate that such production would take 90 days from the

issuance of any such order by the Court.

9

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

Date: December 11, 2006



Westlaw.

903 A.2d 322                                                                          Page 1

903 A.2d 322, 2006 WL 1911098 (Del.Supr.)
**(Cite as: 903 A.2d 322)**

Briefs and Other Related Documents
Eaves v. StateDel.Supr.,2006.(The decision of the
Court is referenced in the Atlantic Reporter in a '
Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
James EAVES, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 22, 2006.**

Submitted: May 26, 2006.
Decided: July 10, 2006.

Court Below-Superior Court of the State of
Delaware, in and for New Castle County, Cr. ID
0104009314.

Before HOLLAND, BERGER, and JACOBS,
Justices.

### ORDER
CAROLYN BERGER, Justice.
*1 This 10th day of July 2006, upon consideration
of the parties' respective briefs and the record
below, it appears to the Court that:

(1) The appellant, James Eaves, filed this appeal
from the Superior Court's denial of his first motion
for postconviction relief. Because we find that
Eaves' postconviction motion was untimely, we do
not reach the merits of his claims on appeal.
Accordingly, we affirm the Superior Court's
judgment, albeit on the alternative ground that his
motion is procedurally barred by the provisions of
Superior Court Criminal Rule 61(i)(1).

(2) The record reflects that Eaves pled guilty in
March 2002 to one count of murder by abuse or
neglect in the first degree. The Superior Court
sentenced him in June 2002 to forty years at Level
V imprisonment to be suspended after thirty years
for decreasing levels of supervision. Eaves did not

file a direct appeal. Instead, he filed his first motion
for postconviction relief in July 2005. The gist of
Eaves' claims were that his plea agreement
contained an agreed-to sentence recommendation of
twenty years and that the Superior Court erred by
sentencing him in excess of his plea agreement.
Eaves also asserted error by both his trial counsel
and the prosecutor with respect to his sentence. The
Superior Court denied Eaves' petition on its merits,
holding that the sentencing judge was not bound by
the prosecutor's sentencing recommendation and the
record of the guilty plea colloquy reflected Eaves'
understanding that the maximum sentence for his
crime was life imprisonment.

(3) Notwithstanding the Superior Court's ruling on
the merits of Eaves' postconviction petition, this
Court first will apply the rules governing the
procedural requirements of Rule 61 before giving
consideration to the merits of any underlying claims
for postconviction relief.[FN1] Rule 61(i)(1) requires
that a petition for postconviction relief be filed
within three years after a conviction becomes final.
[FN2] In this case, Eaves' postconviction motion
should have been filed before July 8, 2005. It was
not filed until July 27, 2005. Accordingly,
consideration of Eaves' untimely motion is barred
unless it asserts a newly recognized, retroactively
applicable right [FN3] or unless it asserts either a
claim that the trial court lacked jurisdiction or a
colorable claim of a miscarriage of justice due to a
constitutional violation. [FN4] Because Eaves'
postconviction claims were based on the erroneous
assertion that the Superior Court was bound by the
prosecutor's sentencing recommendation, he clearly
did not overcome the procedural hurdle of Rule
61(i)(1).

> FN1. *Younger v. State,* 580 A.2d 552, 554
> (Del.1980) (citing *Harris v. Reed,* 489
> U.S. 255 (1989)).

> FN2. Del.Super. Ct.Crim. R. 61(i)(1)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

903 A.2d 322

903 A.2d 322, 2006 WL 1911098 (Del.Supr.)
**(Cite as: 903 A.2d 322)**

(2004) (Rule 61(i)(1) was amended effective July 1, 2005 to reduce the limitations period on postconviction claims to one year for all cases in which the judgment of conviction became final after the effective date).

FN3. The applicable version of Rule 61(i)(1) provides: "A motion for postconviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court."

FN4. Rule 61(i)(5) provides: "The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

Del.Supr.,2006.
Eaves v. State
903 A.2d 322, 2006 WL 1911098 (Del.Supr.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1491658 (Appellate Brief) State's Answering Brief (Apr. 26, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 1376588 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Gibbs v. CarrollD.Del.,2004.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Otto GIBBS, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady, Attorney General of the State of Delaware, Respondents.
**No. Civ.A.03-634-JJF.**

June 17, 2004.

Otto Gibbs, Petitioner, pro se.
Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Respondents.

*MEMORANDUM OPINION*
FARNAN, J.

### I. INTRODUCTION

**\*1** Petitioner Otto Gibbs is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the Court is Petitioner's Petition For A Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and his supporting Memorandum. (D.I. 2; D.I. 3) For the reasons that follow, the Court concludes that Petitioner's Petition is time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

### II. BACKGROUND

On September 8, 1997, Petitioner was convicted by a Delaware Superior Court jury of second degree unlawful sexual intercourse. He was sentenced to 20 years in prison, suspended after 15 years for probation. The Delaware Supreme Court affirmed Petitioner's conviction and sentence on direct

appeal. *Gibbs v. State,* 723 A.2d 396 (Del.1998).

On September 24, 1999, Petitioner filed an application for state post-conviction relief pursuant to Superior Court Criminal Rule 61. The Delaware Superior Court denied post-conviction relief on January 7, 2002, and the Superior Court's denial was affirmed on appeal. *Gibbs v. State,* 804 A.2d 1066 (Del.2002).

### III. DISCUSSION

Petitioner's *pro se* Petition for federal habeas relief and his supporting Memorandum assert the following nine ineffective assistance of counsel claims: (1) trial counsel did not investigate and review all relevant discoverable documents and failed to inform Petitioner about the legality of the State's DNA evidence; (2) trial counsel failed to conduct an independent DNA analysis and failed to hire an expert to review the victim's medical record; (3) trial counsel failed to research the law in support of an affirmative defense of consensual intercourse; (4) trial counsel improperly relied on an instruction of "voluntary social companion" status of the alleged victim to support an affirmative defense of consensual intercourse; (5) trial counsel misinterpreted Delaware's Rape Shield Laws, and as a result, he failed to investigate the victim's background of prior sexual history before trial; (6) trial counsel failed to object to the State's introduction and reliance on inadmissible photographic blood evidence through improper testimony of police officer; (7) trial counsel failed to cross-examine the police officer about the authenticity of photographic blood evidence; (8) trial counsel failed to object to the State's introduction of hearsay testimony from police officer who testified in third party narrative; and (9) trial counsel failed to impeach any state witness' credibility on cross-examination. (D.I. 2; D.I. 3.) Petitioner also asserts that the Superior Court unreasonably summarily denied his Rule 61 motion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 1376588 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

without an evidentiary hearing. (D.I. 3 at J,K.)

On December 18, 2003, Petitioner filed a "Motion to Amend Habeas [Petition]," asking this Court to apply the "[a]ctual innocence, or miscarriage of justice, exception to any and all barred claims" in his Petition. (D.I.18.) The Court granted this amendment. (D.I.27.)

**\*2** In their Answer, Respondents contend that the entire petition is time-barred and ask the Court to dismiss the petition as untimely. (D.I.16.) Petitioner filed a Reply, asking the Court to view his trial counsel's alleged ineffective assistance as "good cause" to excuse his late filing. (D.I.23.) Petitioner's habeas petition is now ripe for review.

### A. One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not allege, nor can the court discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). As such, the one-year period of limitations began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), when a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of review in the United States Supreme Court or when the [90-day] time [period] for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir.1999); *Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). In the present case, the Delaware Supreme Court affirmed Petitioner's conviction and sentence on November 19, 1998. Consequently, Petitioner's conviction became final on February 17, 1999. Thus, pursuant to AEDPA's one-year limitations period, Petitioner needed to file his § 2254 Petition no later than February 17, 2000.

Petitioner's § 2254 Petition is dated July 8, 2003, and it was received by the Court on July 10, 2003. A *pro se* prisoner's habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court. Therefore, the Court adopts July 8, 2003 as the filing date. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir.2003)(the date on which a prisoner transmitted documents to prison authorities is to be considered the actual filing date); *Woods v. Kearney,* 215 F.Supp.2d 458, 460 (D.Del.2002).

**\*3** Even with July 8, 2003 as the filing date, Petitioner filed his Petition more than 3 years too late. As such, his habeas Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). The Court will discuss each doctrine in turn.

### B. Statutory Tolling

Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitations:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2004 WL 1376588 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for state post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998). However, a properly filed state post-conviction motion will only toll the federal habeas limitations period if the post-conviction motion itself is filed within the federal one-year filing period. *See Price v. Taylor,* 2002 WL 31107363, at *2 (D.Del. Sept. 23, 2002).

Here, when Petitioner filed his state post-conviction motion, 217 days of AEDPA's limitations period had already expired. Petitioner's Rule 61 motion tolled AEDPA's limitations period until August 28, 2002, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the Rule 61 motion. *See Swartz v. Meyers,* 204 F.3d 417, 421-22 & n. 5 (3d Cir.2000). When AEDPA's limitations period began to run again on August 29, 2002, only 148 days were left in the one-year filing period. Consequently, Petitioner had to file his federal habeas Petition by January 24, 2003 to be timely. Petitioner, however, did not file his Petition until July 8, 2003. As such, the doctrine of statutory tolling does not render the Petition timely.

### C. Equitable Tolling

A court, in its discretion, may equitably toll the one-year filing period when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998) (internal citations omitted). In general, federal courts invoke the doctrine of equitable tolling "only sparingly." *See United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998). The Third Circuit permits equitable tolling for habeas petitions in only four narrow circumstances:
(1) where the defendant actively misled the plaintiff;
(2) where the plaintiff was in some extraordinary way prevented from asserting his rights;
(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or
(4) where [in a Title VII action] the claimant

received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or the court misled the plaintiff into believing that he had done everything required of him.

*\*4 Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999).

Generally, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Id.* (quoting *Midgley,* 142 F.3d at 179). In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims"; mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted).

Petitioner asserts his trial counsel's allegedly ineffective assistance as a reason to equitably toll the one-year limitations period. (D.I.23.) Specifically, Petitioner argues that trial counsel informed him that he had "3 years to file a Rule 61 motion, then file Habeas among other options." *Id.*

As an initial matter, Petitioner's trial counsel correctly informed Petitioner that he had 3 years to file a state post-conviction motion under the state criminal procedural rules. *See* Del.Super. Ct.Crim. R. 61(i)(1). Even if trial counsel erroneously told Petitioner that AEDPA's statute of limitations would not begin until after the 3 year limitations period for Rule 61 motions had expired, this mistake does not warrant equitably tolling. It is well-settled that inadequate research, attorney error, miscalculation, or other mistakes do not qualify as "extraordinary circumstances" sufficient to trigger equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001). Additionally, if Petitioner misinterpreted trial counsel's statement, his failure to independently investigate AEDPA's limitations period constitutes excusable neglect insufficient to warrant equitable tolling.

Finally, Petitioner appears to assert his actual innocence as a reason for equitably tolling the one-year limitations period. (D.I.18.) However, neither the Third Circuit Court of Appeals, nor the United States Supreme Court, has addressed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 1376588 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

whether a petitioner's "actual innocence" qualifies as an exception to AEDPA's statute of limitations. *Morales v. Carroll,* 2004 WL 1043723, at \*3 (D.Del. Apr. 28, 2004); *Devine v. Diguglielmo,* 2004 WL 945156, at \*3 & n .4 (E.D.Pa. Apr. 30, 2004) (collecting cases). Even if, arguendo, such an exception did exist, Petitioner's short conclusory request that he "would like the court to apply the actual innocence ... exception to all barred claims" does not persuade the Court that he is actually innocent. *See Morales,* 2004 WL 1043723, at \*3 (discussing how a petitioner proves actual innocence). Accordingly, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Petitioner's § 2254 Petition will be dismissed as untimely.

### IV. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a " substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

\*5 When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The Court concludes that Petitioner's habeas Petition must be dismissed as untimely. Reasonable jurists would not find this conclusion to be unreasonable. Consequently, the Court declines to issue a certificate of appealability.

### VI. CONCLUSION

For the reasons stated, Petitioner's Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is denied. An appropriate Order shall issue.

### ORDER

At Wilmington, this 17th day of June, 2004, consistent with the Memorandum Opinion issued this same day;

IT IS HEREBY ORDERED that:

1. Petitioner Otto Gibbs' Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 2; D.I. 3.)

2. The Court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2004.
Gibbs v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1376588 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00634 (Docket) (Jul. 10, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2004 WL 1368845 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Samuel v. CarrollD.Del.,2004.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Harry L. SAMUEL, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady,
Attorney General of the State of Delaware,
Respondents.
**No. Civ.A.03-487-SLR.**

June 9, 2004.

Harry L. Samuel, petitioner, pro se.
Loren C. Meyers, Chief of Appeals Division,
Delaware Department of Justice, Wilmington,
Delaware, for respondents.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

**\*1** Petitioner Harry L. Samuel is a Delaware inmate
in custody at the Delaware Correctional Center in
Smyrna, Delaware. Currently before the court is
petitioner's application for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. (D.I.2) For the
reasons that follow, the court concludes that his
application is time-barred by the one-year period of
limitations prescribed in 28 U.S.C. § 2244(d)(1).
Accordingly, the court will dismiss the application
as untimely.

II. FACTUAL AND PROCEDURAL
BACKGROUND

Petitioner attacked two counselors at the Plummer
House Work Release Center in Wilmington,
Delaware. A grand jury indictment charged him
with attempted murder, second degree assault, two

counts of assault in a detention facility, and four
counts of possession of a deadly weapon during the
commission of a felony. Thereafter, in October
1994, a Delaware Superior Court jury found
petitioner not guilty of attempted murder, but guilty
of the lesser included offense of first degree assault.
The jury also convicted him of the remaining
charges. *See Samuel v. State,* 676 A.2d 906, * *1
(Del.1996).

On direct appeal, the Delaware Supreme Court
ordered the two assault convictions to be merged
with the two counts of assault in a detention facility
and remanded the case for re-sentencing. *Id.*
Petitioner was re-sentenced on May 31, 1996 to a
total of 98 years incarceration. *See Samuel v. State,*
694 A.2d 48 (Del.1997). These sentences were
affirmed on appeal. *Id.* at * *2.

On November 19, 2001, petitioner applied to the
Delaware Superior Court for a copy of the trial
transcript. This request was denied, and petitioner's
ensuing appeal was dismissed for lack of
jurisdiction. *Samuel v. State,* 788 A.2d 132
(Del.2001)

On April 28, 2003, the United States Supreme
Court denied petitioner's application for a writ of
certiorari seeking review of his sentences. *Samuel v.
Delaware,* 538 U.S. 1004 (2003). Thereafter, on
August 11, 2003, petitioner moved for a reduction
of sentence in the Delaware Superior Court. The
Superior Court denied the motion on September 11,
2003, and petitioner did not appeal. (D.I. 13, at ¶ 2)

III. DISCUSSION

Presently before the court is petitioner's *pro se*
application for federal habeas relief. (D.I.2) He
asserts three habeas claims: (1) the 1996
re-sentencing court erred in denying his request for
a continuance to obtain a psychiatric evaluation; (2)
the judge who re-sentenced him had a closed mind

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 1368845 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

and relied on impermissible factors in imposing the sentences; and (3) the weapons offenses related to the assault convictions should have been vacated because the assault convictions were merged with the assault in a detention facility convictions. (D.I.2)

Respondents contend that the entire petition is time-barred and ask the court to dismiss the petition as untimely. (D.I.13) Petitioner's habeas petition is now ready for review.

### A. One-Year Statute of Limitations

**\*2** The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not allege, nor can the court discern, any facts triggering the application of § 2244(d)(1)(B),(C), or (D). As such, the one-year period of limitations began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), when a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of

review in the United States Supreme Court or when the [90-day time-period] for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575 (3d Cir.1999); *Jones v. Morton,* 195 F.3d 153, 157 (3d Cir.1999). In the present case, the Delaware Supreme Court affirmed petitioner's conviction on April 16, 1997. *Samuel v. State,* 694 A.2d 48 (Del.1997). Consequently, petitioner's conviction became final for the purposes of § 2244(d)(1) on July 15, 1997. Thus, to timely seek habeas relief with this court, petitioner needed to file his § 2254 habeas application no later than July 15, 1998

A *pro se* prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir.2003). Petitioner's habeas application is dated May 17, 2003. Therefore, the court adopts May 17, 2003 as the presumptive filing date. *See Woods v. Kearney,* 215 F.Supp.2d 458, 460 (D.Del.2002).

With May 17, 2003 as the filing date, petitioner filed his application almost five years too late. As such, his habeas application is time-barred and should be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The court will discuss each doctrine in turn.

### B. Statutory Tolling

Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitations:
**\*3** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for state post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                      Page 3

Not Reported in F.Supp.2d, 2004 WL 1368845 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

However, even if a state post-conviction motion is properly filed under state procedural rules, it will not toll or revive the federal habeas limitations period if the post-conviction motion itself is not filed within the federal one-year filing period. *See Price v. Taylor,* 2002 WL 31107363, at *2 (D.Del. Sept. 23, 2002).

Here, when petitioner filed his motion for sentence reduction on August 11, 2003, the one-year federal habeas limitations period had already expired on July 15, 1998. As such, this motion does not toll, or revive, the federal habeas limitations period.[FN1] *See Lawrence v. Carroll,* 2003 WL 21402509, at *2 (D. Del. June 10, 2003). Thus, petitioner's habeas application is time-barred unless the one-year time period is equitably tolled.

> FN1. Moreover, the Delaware Superior Court denied the motion for sentence reduction as untimely. Consequently, it was not "properly filed" for purposes of § 2244(d)(2) and could not trigger the statutory tolling doctrine. *See, e.g., Wilmer v. Carroll,* 2003 WL 21146750, at *3-4 (D.Del. May 16, 2003).

### C. Equitable Tolling

A court, in its discretion, may equitably toll the one-year filing period when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998) (internal citations omitted). Federal courts invoke the doctrine of equitable tolling "only sparingly," *see United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998), and the Third Circuit permits equitable tolling for habeas applications in only four narrow circumstances:
(1) where the defendant actively misled the plaintiff;
(2) where the plaintiff was in some extraordinary way prevented from asserting his rights;
(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or
(4) where [in a Title VII action] the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or

the court misled the plaintiff into believing that he had done everything required of him.

*Jones,* 195 F.3d at 159.

In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims" ; mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted). Basically, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Jones,* 195 F.3d at 159.

Petitioner has not alleged, and the court cannot discern, any "extraordinary circumstances" that warrant equitably tolling the one-year limitations period. To the extent petitioner made a mistake or miscalculation regarding the one-year filing period, such mistakes do not justify equitable tolling. *See Simpson v. Snyder,* 2002 WL 1000094, at *3 (D.Del. May 14, 2002). Accordingly, the court concludes that the doctrine of equitable tolling is not available to petitioner on the facts he has presented and, therefore, his § 2254 application will be dismissed as untimely.

### IV. CERTIFICATE OF APPEALABILITY

**\*4** Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a " substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

When a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 4

Not Reported in F.Supp.2d, 2004 WL 1368845 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The court concludes that petitioner's habeas application must be dismissed as untimely. Reasonable jurists would not find this conclusion to be unreasonable. Consequently, the court declines to issue a certificate of appealability.

### V. CONCLUSION

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

D.Del.,2004.
Samuel v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1368845 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00487 (Docket) (May. 20, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 1

Not Reported in F.Supp.2d, 2004 WL 1043723 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Morales v. CarrollD.Del.,2004.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Luis MORALES, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady,
Attorney General of the State of Delaware,
Respondents.
**No. 03-220-JJF.**

April 28, 2004.

Luis Morales, Petitioner, pro se.
Thomas E. Brown, Deputy Attorney General of the
State of Delaware Department of Justice,
Wilmington, Delaware, for Respondents.

*MEMORANDUM OPINION*
FARNAN, J.
**\*1** Presently before the Court is a Petition Under 28
U.S.C. § 2254 for Writ of Habeas Corpus by a
Person in State Custody (D.I.1) filed by Petitioner,
Luis Morales. For the reasons set forth below, the
Court will dismiss the Petition as time-barred by the
one-year period of limitation prescribed in 28
U.S.C. § 2244(d)(1).

BACKGROUND

In January 1996, Petitioner was convicted by a jury
in the Delaware Superior Court of delivery of
heroin, possession with intent to deliver heroin,
maintaining a dwelling, possession of a hypodermic
needle and syringe, and conspiracy. The Delaware
Superior Court concluded that Petitioner was a
habitual offender and sentenced him to life in
prison. On direct appeal, the Delaware Supreme
Court affirmed the conviction, but reversed the
superior court's determination that Petitioner was a
habitual offender. *Morales v. State,* 696 A.2d 390

(Del.1997) (*"Morales I"* ).

Petitioner was resentenced on October 3, 1997.
Petitioner did not appeal his new sentence. On
October 10, 2000, Petitioner filed a motion for state
post-conviction relief, which the Delaware Superior
Court denied as time-barred under the three-year
limitations period set forth in Delaware Criminal
Rule 61(i)(1). *State v. Morales,* 2001 WL 1486169
(Del.Super.Oct. 31, 2001) (*"Morales II"* ). On
appeal, the Delaware Supreme Court affirmed the
decision of the Delaware Superior Court. *Morales
v. State,* 2002 WL 272307 (Del. Feb. 22, 2002) (*"
Morales III"* ).

By his federal habeas Petition, Petitioner raises
three claims for relief: (1) counsel provided
ineffective assistance by failing to obtain an
interpreter for Petitioner during trial; (2) the police
conducted an illegal search; and (3) Petitioner's due
process rights were violated because he was
precluded from presenting a mistaken identity
defense. In their Answer Brief, Respondents
contend that the Petition is time-barred under 28
U.S.C. § 2244(d), or in the alternative, Petitioner's
claims are procedurally barred.

DISCUSSION

I. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), Congress amended the
federal habeas statute by prescribing a one-year
period of limitation for the filing of habeas petitions
by state prisoners. *Stokes v. District Attorney of
County of Philadelphia,* 247 F.3d 539, 541 (3d Cir.)
, *cert. denied,* 122 S.Ct. 364 (2001). In pertinent
part, the AEDPA provides:
(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 1043723 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

The limitation period shall run from the latest of -
(A) the date on which the judgment became final by
the conclusion of direct review or the expiration of
the time for seeking such review ...

28 U.S.C. § 2244(d)(1).

Petitioner was resentenced on October 3, 1997.
Petitioner did not file a direct appeal of his newly
imposed sentence. Thus, the limitation period began
to run upon the expiration of the time for filing such
an appeal. *See Nara v. Frank,* 264 F.3d 310, 314
(3d Cir.2001) (stating that where petitioner did not
file a direct appeal, his conviction became final
when the time for filing a direct appeal expired);
*Kapral v. United States,* 166 F.3d 565, 576 (3d
Cir.1999) (stating that the limitation period begins
to run at the expiration of the time for filing a direct
appeal if none is filed). Pursuant to 10 Del. C. § 147
, Petitioner had thirty days in which to file his direct
appeal or until November 2, 1997. *See also*
Del.Supr. Ct. R. 6(a)(ii). Applying the one-year
limitation period to this date, Petitioner was
required to file his federal habeas petition on or
before November 2, 1998.

*2 A petition is deemed filed on the date it is
delivered to prison officials for mailing to the court.
*Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998).
Petitioner does not indicate the date on which the
Petition was delivered to prison authorities for
mailing. However, absent proof of mailing, this
Court has held that the date of the signatures within
the petition is the date on which the petition is
deemed filed. *See Johnson v. Brewington-Carr,*
Civ. Act. No. 99-181-JJF, mem. op. at 4 (D.Del.
Feb. 22, 2000).

In this case, the Petition is dated February 5, 2003,
which is well past the November 1998 filing
deadline. Accordingly, the Court concludes that the
Petition is time-barred under Section 2244(d),
unless the limitation period has been statutorily or
equitably tolled. *See Jones v. Morton,* 195 F.3d
153, 158 (3d Cir.1999).

## II. Statutory Tolling

The AEDPA provides for statutory tolling of the
one-year period of limitation as follows:
The time during which a properly filed application
for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is
pending shall not be counted toward any period of
limitation under this subsection.

28 U.S.C. § 2244(d)(2).

In this case, Petitioner filed a motion for
post-conviction relief in the Delaware Superior
Court on October 10, 2000, nearly two years after
the filing deadline for his federal habeas petition.
Because the federal limitation period had already
expired, it could not be tolled by the filing of
Petitioner's post-conviction motion. *Downs v.
Carroll,* 2003 WL 716597, *1 (D.Del. Feb. 25,
2003) (collecting cases); *Whalen v. Kearney,* Civ.
Act. No. 99-654-JJF, mem. op. at 5-6 (D.Del. Sept.
29, 2000). Accordingly, the Court concludes that
the statutory tolling provision cannot render the
Petition timely filed.

## III. Equitable Tolling

Additionally, the one-year period of limitation may
be equitably tolled. *Fahy v. Horn,* 240 F.3d 239,
244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001);
*Jones,* 195 F.3d at 159; *Miller v. New Jersey State
Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998).
Equitable tolling applies:
only when the principles of equity would make the
rigid application of a limitation period unfair.
Generally, this will occur when the petitioner has in
some extraordinary way been prevented from
asserting his or her rights. The petitioner must show
that he or she exercised reasonable diligence in
investigating and bringing [the] claims. Mere
excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In
other words, equitable tolling "may be appropriate
if (1) the defendant has actively misled the plaintiff,
(2) if the plaintiff has 'in some extraordinary way'
been prevented from asserting his rights, or (3) if
the plaintiff has timely asserted his rights
mistakenly in the wrong forum." *Jones,* 195 F.3d at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2004 WL 1043723 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

159 (quoting *United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)).

**\*3** In the instant case, Petitioner fails to allege any extraordinary circumstances giving rise to equitable tolling. Petitioner suggests that he has difficulty communicating in English and received poor advice from "jail-house lawyers," and therefore, his Petition should be tolled. However, courts have recognized that the lack of proficiency in English and the lack of sound advice from others in prison are insufficient reasons to equitably toll the one-year limitation period. *See e.g. Tan v. Bennett,* 2001 WL 823869, \*2 (S.D.N.Y. July 20, 2001) (collecting cases); *Chan v. United States,* 2000 WL 1843290, \*2 (E.D.N.Y. Oct. 25, 2000); *Martinez v. Kuhlman,* 1999 WL 1565177, \*2,5 (S.D.N.Y. Dec. 3, 1999); *Nguyen v. Mervau,* 1998 WL 556628, \*2 (N.D.Cal. Aug. 24, 1998).

In addition, Petitioner alleges in a Reply To State's Answer that he is actually innocent of the crimes for which he was convicted. It appears to the Court that neither the United States Supreme Court nor Third Circuit have ruled on the question of whether actual innocence can equitably toll the one-year limitation period. However, even assuming actual innocence can toll the limitation period, the Court would conclude that Petitioner has not established a sufficient basis to support his claim of actual innocence. To succeed on a claim of actual innocence, the petitioner must demonstrate, in light of all the evidence, that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo,* 513 U.S. 298, 327-328 (1995). Petitioner contends that because of his problems speaking English, his lawyer did not understand his contention that he was the victim of mistaken identity. Petitioner contends that he and his brother resemble each other, and that his brother was actually responsible for the crimes for which Petitioner was convicted. Petitioner's claim, however, is untenable in light of the evidence adduced at trial. The drug transaction forming the basis of Petitioner's convictions involved the purchase of drugs by an undercover officer. (Petitioner's Appendix in *Morales III,* No. 233, 1996 (Del.1997) ( "Petitioner's App.") at A-5-9). The officer purchased three bags of heroin for forty

dollars, and the money used by the officer was marked. Shortly after the transaction, the officer observed Petitioner leaving the residence from where the drugs were purchased. Petitioner was stopped by a patrol car, and one of the marked bills was found in Petitioner's possession. (Petitioner's App. at A-12-24). Petitioner was identified by the officer involved in the purchase transaction as the individual from whom the officer purchased the drugs, and evidence was also presented that Petitioner admitted to using drugs and selling to support his habit. (State's Appendix in *Morales III,* No. 233, 1996 at B-1). In these circumstances, the Court cannot conclude that the alleged resemblance between Petitioner and his brother would have made it more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Accordingly, Petitioner has failed to demonstrate that equitable tolling is warranted, and therefore, the Court will dismiss the Petition as time-barred.

### IV. Certificate of Appealability

**\*4** The Court must next determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if Petitioner " has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that reasonable jurists would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, the Court has concluded that the Petition is barred by the one-year

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 1043723 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

period of limitation. The Court is convinced that reasonable jurists would not debate otherwise. Because the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons discussed, the Court will dismiss the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner, Luis Morales, and deny the Writ of Habeas Corpus sought by Petitioner. In addition, the Court will not issue a certificate of appealability.

An appropriate Order will be entered.

## *ORDER*

At Wilmington, this *28* day of April 2004, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (D.I.1) filed by Petitioner, Luis Morales, is DISMISSED and the Writ Of Habeas Corpus is DENIED.

2. The Court declines to issue a certificate of appealability for failure to satisfy the standard under 28 U.S.C. § 2253(c)(2).

D.Del.,2004.
Morales v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1043723 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00220 (Docket) (Feb. 24, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



888 A.2d 231

888 A.2d 231, 2005 WL 3357633 (Del.Supr.)
**(Cite as: 888 A.2d 231)**

Briefs and Other Related Documents
Cochran v. StateDel.Supr.,2005.(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Donald R. COCHRAN, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
No. 156,2005.

Submitted Oct. 7, 2005.
Decided Dec. 8, 2005.

**Background:** Following pleas to burglary, assault, and possession of a deadly weapon during commission of a felony, defendant filed second motion for sentence modification. The Superior Court, Kent County, denied motion. Defendant appealed.

**Holding:** The Supreme Court held that any trial court error was not prejudicial, given that motion was untimely and improperly repetitive.

Affirmed.
West Headnotes
**[1] Criminal Law 110 ☜1166(1)**

110 Criminal Law
  110XXIV Review
    110XXIV(Q) Harmless and Reversible Error
      110k1166 Preliminary Proceedings
        110k1166(1) k. In General. Most Cited Cases
Even if trial court judge should have disqualified himself from ruling on defendant's second motion for sentence modification, such error was not prejudicial, where defendant's motion was untimely and improperly repetitive. Superior Court Criminal

Rule 35(b).

**[2] Criminal Law 110 ☜1177**

110 Criminal Law
  110XXIV Review
    110XXIV(Q) Harmless and Reversible Error
      110k1177 k. Sentence and Judgment and Proceedings After Judgment. Most Cited Cases
Even if trial court judge should have excused untimeliness of defendant's second motion for sentence modification on the ground of extraordinary circumstances due to defendant's " mental illness," such error was not prejudicial, where defendant's motion was improperly repetitive. Superior Court Criminal Rule 35(b).

Court Below-Superior Court of the State of Delaware in and for Kent County, Cr. ID No. 0102010757.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

*ORDER*

*1 This 8th day of December 2005, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1) The defendant-appellant, Donald R. Cochran, filed an appeal from the Superior Court's April 4, 2005 order denying his second motion for sentence modification pursuant to Superior Court Criminal Rule 35(b). We find no merit to the appeal. Accordingly, we AFFIRM.

(2) In February 2003, Cochran entered Robinson pleas [FN1] to Burglary in the First Degree, Assault in the First Degree, and Possession of a Deadly Weapon During the Commission of a Felony. On the burglary conviction, he was sentenced to 20 years incarceration at Level V, to be suspended

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

888 A.2d 231

888 A.2d 231, 2005 WL 3357633 (Del.Supr.)
**(Cite as: 888 A.2d 231)**

after 6 years for decreasing levels of probation. He was sentenced to 10 years incarceration at Level V and 2 years incarceration at Level V on the assault and weapons convictions, respectively. This Court dismissed Cochran's direct appeal as untimely.[FN2]

> FN1. Super. Ct.Crim. R. 11(b).

> FN2. *Cochran v. State,* Del.Supr., No. 356, 2003, Veasey, C.J. (Nov. 12, 2003).

(3) In this appeal, Cochran claims that: a) the Superior Court judge who denied his motion should have disqualified himself; and b) the Superior Court judge should have excused the untimeliness of the motion on the ground of extraordinary circumstances due to Cochran's "mental illness."

(4) A judge should disqualify himself in a proceeding in which the judge's impartiality "might reasonably be questioned." [FN3] This rule includes instances where "[t]he judge has a personal bias or prejudice concerning a party...." [FN4]

> FN3. Del. Judges' Code of Judic. Cond., Canon 3C (1); *Stevenson v. State,* 782 A.2d 249, 255-58 (Del.2001).

> FN4. Del. Judges' Code of Judic. Cond., Canon 3C(1)(a).

(5) The Superior Court docket sheet in this case reflects that the Superior Court judge who denied Cochran's second motion for sentence modification presided over Cochran's initial case review. Two other Superior Court judges presided over Cochran's final case review and the entry of Cochran's Robinson pleas, respectively. The original judge then granted Cochran's request for a continuance of the sentencing date. After Cochran's sentencing was continued for a second time, the docket sheet notes that the sentencing should not be handled by the original judge because of a "possible conflict." Cochran's sentencing hearing was presided over by another Superior Court judge, who also denied Cochran's first motion for sentence modification. While Cochran contends that his

counsel told him that the original judge had a personal relationship with the victim's family, there is nothing in the record to support that contention.

[1] (6) We find Cochran's first claim to be without merit. Even assuming that the Superior Court judge should have disqualified himself from ruling on Cochran's second motion for sentence modification, [FN5] the outcome would have been the same if another Superior Court judge had decided it, since there is no question that Cochran's motion was not only untimely, but repetitive. [FN6]

> FN5. We note that Cochran's second motion for sentence modification was decided approximately two years after the judge's last involvement with Cochran's case.

> FN6. Super. Ct.Crim. R. 35(b).

[2] (7) Cochran's second claim also is unavailing. Even assuming that Cochran's "mental illness" would have excused his untimely motion, the Superior Court was, nevertheless, compelled to deny the motion as repetitive.[FN7]

> FN7. Id.

*2 NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

Del.Supr.,2005.
Cochran v. State
888 A.2d 231, 2005 WL 3357633 (Del.Supr.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2397177 (Appellate Brief) State's Answering Brief (Aug. 17, 2005) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

846 A.2d 238

Page 1

846 A.2d 238, 2004 WL 716773 (Del.Supr.)
**(Cite as: 846 A.2d 238)**

Morrison v. StateDel.Supr.,2004.(The decision of
the Court is referenced in the Atlantic Reporter in a
'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Duane A. MORRISON, Defendant Below,
Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 562,2003.**

Submitted Jan. 9, 2004.
Decided March 24, 2004.

**Background:** Following his conviction, on plea of
guilty, of delivery of cocaine, and his receipt of
sentence of 10 years' imprisonment, defendant,
acting pro se, filed third motion for modification of
sentence. The Superior Court, Kent County, denied
motion as untimely filed, and defendant appealed.

**Holding:** The Supreme Court held that superior
court did not abuse its discretion in denying
defendant's motion for modification of sentence.

Affirmed.
West Headnotes
**Criminal Law 110 ⟜1586**

110 Criminal Law
    110XXX Post-Conviction Relief
        110XXX(C) Proceedings
            110XXX(C)1 In General
                110k1586 k. Time for Proceedings.
Most Cited Cases

**Criminal Law 110 ⟜1668(9)**

110 Criminal Law
    110XXX Post-Conviction Relief
        110XXX(C) Proceedings
            110XXX(C)3 Hearing and Determination
                110k1666 Effect of Determination

                110k1668        Successive
Post-Conviction Proceedings
                110k1668(9)    k.    Proceedings.
Most Cited Cases
Superior court did not abuse its discretion in
denying defendant's pro se motion for modification
of sentence, where motion was filed more than five
years after defendant's sentencing and was
repetitive. Superior Court Criminal Rule 35(b).

Court Below: Superior Court of the State of
Delaware, in and for Kent County in IK97-07-0024.
Def. ID No. 9701022577.

Before HOLLAND, BERGER, and STEELE,
Justices.

*ORDER*

**\*1** This 24th day of March 2004, upon
consideration of the appellant's opening brief and
the appellee's motion to affirm pursuant to Supreme
Court Rule 25(a), it appears to the Court that:

(1) The appellant, Duane A. Morrison, filed an
appeal from the Superior Court's October 22, 2003
order denying his motion for modification of
sentence pursuant to Superior Court Criminal Rule
35(b). The appellee, State of Delaware, has moved
to affirm the judgment of the Superior Court on the
ground that it is manifest on the face of Morrison's
opening brief that the appeal is without merit. We
agree and AFFIRM.

(2) In 1997, Morrison pleaded guilty to Delivery of
Cocaine. He was sentenced in February 1998 to ten
years at Level V imprisonment followed by six
months at Level IV supervision.

(3) In June 1999, more than a year after his
sentencing, Morrison, acting *pro se,* filed his first
motion for modification of sentence pursuant to
Superior Court Criminal Rule 35(b) ("Rule 35(b)").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

846 A.2d 238

846 A.2d 238, 2004 WL 716773 (Del.Supr.)
(Cite as: 846 A.2d 238)

Page 2

Morrison contended that he had demonstrated "extraordinary rehabilitation" through participation in prison programs and deserved a modification of his sentence so that he could be eligible to participate in further programming. By order dated October 8, 1999, the Superior Court granted Morrison's motion, modifying his sentence to require his completion of the Greentree Program.

(4) In July 2001, more than three years after his sentencing, Morrison, through counsel, filed his second motion for modification of sentence pursuant to Rule 35(b). Morrison contended that he had completed all available and required rehabilitative programs at the prison, and he requested that his Level V sentence be suspended for participation in the Level IV Crest Program. By order dated August 17, 2001, the Superior Court denied Morrison's motion on the basis that his claim of "exceptional rehabilitation" was not recommended by the Department of Correction and thus did not satisfy the requirement of "exceptional circumstances."

(5) In August 2003, more than five years after his sentencing, Morrison, again proceeding *pro se*, filed his third motion for modification of sentence pursuant to Rule 35(b). Morrison again argued "exceptional rehabilitation." By order dated October 22, 2003, the Superior Court denied Morrison's motion as time-barred. This appeal followed.

(6) Rule 35(b) provides that the court may modify a sentence of imprisonment on a motion made within ninety days after the sentence is imposed. On a motion filed more than ninety days after the sentence is imposed, the court will consider a sentence modification "only in extraordinary circumstances" or pursuant to title 11, section 4217 of the Delaware Code. Section 4217 establishes a procedure to permit the Department of Correction to apply for a modification of an offender's sentence for good cause shown, including "exceptional rehabilitation," when the Department certifies that the release of the offender shall not constitute a substantial risk to the community or the offender.

*2 (7) On appeal, Morrison observes that the Superior Court could have, but did not, deny his first sentence modification motion as time-barred. Thus, according to Morrison, it was an abuse of discretion for the Superior Court to deny his most recent sentence modification motion as time-barred.

(8) We have concluded that the Superior Court did not abuse its discretion when it denied Morrison's third motion for sentence modification. The Superior Court properly determined that Morrison's motion was untimely. Moreover, Morrison's motion was repetitive, which also precluded its consideration by the Superior Court.[FN*]

> FN* *See Webster v. State,* 2002 WL 487177 (Del.Supr.) (affirming the decision of a trial court on different grounds than those articulated by the trial court).

(9) It is manifest on the face of Morrison's opening brief that this appeal is without merit. The issues presented on appeal are controlled by settled Delaware law. To the extent that judicial discretion is implicated, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

Del.Supr.,2004.
Morrison v. State
846 A.2d 238, 2004 WL 716773 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

825 A.2d 238                                                                 Page 1

825 A.2d 238, 2003 WL 21241393 (Del.Supr.)
**(Cite as: 825 A.2d 238)**

Hollis v. StateDel.Supr.,2003.(The decision of the Court is referenced in the Atlantic Reporter in a ' Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
William A. HOLLIS, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 87,2003.**

Submitted April 2, 2003.
Decided May 27, 2003.

Court Below-Superior Court of the State of Delaware, in and for New Castle County, Cr.A. Nos. IN94-09-0215;0218;0220;1228.

Before VEASEY, Chief Justice, BERGER and STEELE, Justices.

### ORDER

*1 This 27th day of May 2003, upon consideration of the appellant's opening brief and the appellee's motion to affirm pursuant to Supreme Court Rule 25(a), it appears to the Court that:

(1) The defendant-appellant, William A. Hollis, filed an appeal from the Superior Court's January 21, 2003 order denying his motion for reduction of sentence pursuant to Superior Court Criminal Rule 35(b). The plaintiff-appellee, the State of Delaware, has moved to affirm the judgment of the Superior Court on the ground that it is manifest on the face of Hollis' opening brief that the appeal is without merit. [FN1] We agree and AFFIRM.

FN1. Supr. Ct.. R. 25(a).

(2) In September 1994, Hollis was charged with multiple robbery and weapon offenses. In February 1995, Hollis pleaded guilty to four counts of Robbery in the First Degree and the remaining charges were dismissed. In his plea agreement, Hollis agreed that he was eligible for sentencing as an habitual offender.[FN2] In April 1995, the Superior Court sentenced Hollis as an habitual offender to a total of 21 years incarceration at Level V, to be suspended after 12 years for decreasing levels of probation. The Superior Court denied Hollis' motions for sentence reduction once in 1995 and twice in 2002. The most recent denial resulted in the instant appeal.

FN2. Del.Code Ann. tit. 11, § 4214(a).

(3) In his appeal, Hollis claims that: a) the Superior Court's denial of his motion on the basis of his " lengthy criminal history" constituted an abuse of discretion because there was no evidence of his prior record presented at the guilty plea hearing; and b) the Superior Court's order denying his motion improperly failed to set forth the criteria necessary to succeed on a motion for sentence reduction.

(4) Hollis' appeal is unavailing. We find that the Superior Court did not abuse its discretion when it denied Hollis' third motion for sentence reduction, although we affirm the denial on grounds different from those articulated by the Superior Court.[FN3] As a procedural matter, Hollis' motion was untimely and he failed to demonstrate any "extraordinary circumstances" justifying consideration of the motion.[FN4] Moreover, Hollis' motion was repetitive, which also precluded its consideration by the Superior Court.[FN5] Hollis, finally, has provided no legal authority for his claim that the Superior Court's order should have included the criteria for a successful motion for sentence reduction.

FN3. *Unitrin, Inc. v. Am. Gen. Corp.,* 651 A.2d 1361, 1390 (Del.1995).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

825 A.2d 238                                                                                  Page 2

825 A.2d 238, 2003 WL 21241393 (Del.Supr.)
**(Cite as: 825 A.2d 238)**

      FN4. Super. Ct.Crim. R. 35(b).

      FN5. Id.

(5) It is manifest on the face of Hollis' opening brief that this appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

Del.Supr.,2003.
Hollis v. State
825 A.2d 238, 2003 WL 21241393 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                Page 1

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Thomas v. SnyderD.Del.,2001.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Kevin A. THOMAS, Petitioner,
v.
Robert W. SNYDER, Warden, and Attorney General of the State of Delaware, Respondents.
**No. CIV.A. 98-597-GMS.**

Nov. 28, 2001.

MEMORANDUM AND ORDER

SLEET, District J.
*1 Kevin A. Thomas was convicted of first degree murder and possession of a deadly weapon during the commission of a felony. He is presently incarcerated in the Delaware Correctional Center in Smyrna, Delaware, where he is serving a sentence of life imprisonment. Thomas has filed with this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As explained below, the court will dismiss Thomas' petition as time barred by the one-year period of limitation prescribed in 28 U.S.C. § 2244(d).

I. BACKGROUND

On June 28, 1993, following a jury trial in the Delaware Superior Court, Kevin A. Thomas was convicted of first degree murder and possession of a deadly weapon during the commission of a felony. The evidence at trial demonstrated that on September 13, 1992, Thomas shot David Turner in the face and killed him. Thomas was seventeen years old at the time. He was sentenced to life in prison without parole on the murder conviction and to a consecutive sentence of five years in prison on the weapons conviction. The Delaware Supreme Court affirmed Thomas' conviction and sentence on September 21, 1994.

On December 18, 1996, Thomas filed in state court a motion for post-conviction relief pursuant to Rule 61 of the Delaware Superior Court Criminal Rules. The trial court summarily dismissed Thomas' Rule 61 motion on December 23, 1996. Thomas appealed to the Delaware Supreme Court. His subsequent motion to withdraw the appeal was granted on March 11, 1997. Thomas filed a second Rule 61 motion for post-conviction relief on March 27, 1997, which was summarily dismissed on May 9, 1997. Again, Thomas appealed to the Delaware Supreme Court. The Court affirmed the order of dismissal on November 24, 1997.

Thomas has now filed with this court the current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition Thomas articulates four separate grounds for relief: (1) The searches of his residence and car were in violation of the Fourth Amendment, and all evidence seized from these searches should have been suppressed; (2) The trial court erred in admitting identification testimony that was the result of an impermissibly suggestive photographic identification procedure; (3) The trial court violated his constitutional right to due process by giving a supplemental jury instruction pursuant to *Allen v. United States,* 164 U.S. 492 (1896); and (4) His constitutional rights were violated when police questioned him without a parent or legal guardian present. The respondents argue that the petition is subject to a one-year period of limitation that expired before Thomas filed it. Thus, they request that the court dismiss the petition as time barred.

II. DISCUSSION

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute by prescribing a one-year

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

period of limitation for the filing of § 2254 habeas petitions by state prisoners. *Stokes v. District Attorney of the County of Philadelphia,* 247 F.3d 539, 541 (3d Cir.2001). Effective April 24, 1996, the AEDPA provides:

**\*2** (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their § 2254 petitions no later than April 23, 1997. *See Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998) (prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Thomas' conviction became final prior to the enactment of the AEDPA. He was convicted on June 28, 1993. The Delaware Supreme Court affirmed the judgment of conviction on September 21, 1994. Thomas was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13. Although Thomas did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of " the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Thomas' conviction became final on December 20, 1994, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

Ascertaining the precise date Thomas filed his habeas petition with the court is somewhat problematic. The court's docket reflects that the petition was filed on October 21, 1998, the date the clerk's office received his petition and filing fee. A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court receives it. *Id.* at 113. Thomas has provided the court with ' no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated August 10, 1998. The respondents maintain that the filing date is October 8, 1998, but they provide no documentation to support this conclusion. Under these circumstances, the court will extend Thomas every benefit of the doubt and will consider his habeas petition filed on August 10, 1998, the earliest possible date he could have delivered it to prison officials for mailing.

**\*3** Obviously Thomas' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d) 's period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thomas filed in state court a Rule 61 motion for post-conviction relief on December 18, 1996, which the Superior Court summarily dismissed on December 23, 1996. As previously noted, Thomas appealed from the order of dismissal. His subsequent motion to withdraw the appeal was granted on March 11, 1997. The respondents concede, and correctly so, that the filing of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

motion for post-conviction relief tolled the period of limitation. Thus, the period of time from December 18, 1996, through March 11, 1997, does not count toward the one-year period of limitation. [FN1]

> FN1. The court notes that the one-year period is tolled during the time between the Superior Court's dismissal of Thomas' Rule 61 motion and his timely appeal to the Delaware Supreme Court. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000)

Thomas filed a second Rule 61 motion for post-conviction relief in state court on March 27, 1997, which was summarily dismissed on May 9, 1997. The Delaware Supreme Court affirmed the dismissal on November 24, 1997. Again, the respondents concede that the filing of the second Rule 61 motion tolled the period of limitation. [FN2] Thus, the period of time from March 27, 1997, through November 24, 1997, is excluded from the one-year limitation period. [FN3]

> FN2. Only a "properly filed application" for post-conviction review tolls the one-year period under § 2244(d)(2). Whether Thomas' second Rule 61 motion constitutes a "properly filed application" is subject to debate. Under Rule 61, "[a]ny ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred." Super. Ct. R.Crim. P., Rule 61(i)(2). This procedural bar, however, is inapplicable where a motion raises "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.,* Rule 61(i)(5). The court need not, and does not, address whether Thomas' second Rule 61 motion was a "properly filed application" because the respondents concede that the one-year period was

tolled while the second Rule 61 motion was pending. Regardless, as discussed herein, Thomas' habeas petition is untimely.

> FN3. Thomas could have filed, but did not file, a petition for a writ of certiorari with the United States Supreme Court within ninety days of the Delaware Supreme Court's order. *See* Supreme Court Rule 13. As explained above, on direct review that ninety-day period is excluded from the one-year period of limitation. *See Kapral,* 166 F.3d at 576. In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does *not* toll the one-year period, and the ninety-day period is counted. *Stokes,* 247 F.3d at 543.

Nonetheless, since the date of the enactment of AEDPA, more than one year has passed during which statutory tolling does not apply. First, from April 24, 1996, through December 17, 1996, a period of 238 days, no post-conviction proceedings were pending, and those 238 days are included as part of the one-year period. In addition, from March 12, 1997, through March 26, 1997, no post-conviction relief proceedings were pending, and those fourteen days must be counted. Finally, from November 25, 1997, through August 9, 1998, a period of 258 days, no motion for post-conviction relief was pending, and those 258 days must be counted.

In sum, following the enactment of the AEDPA, 510 days lapsed during which Thomas had no post-conviction proceedings pending for purposes of § 2244(d)(2). This period of time, well in excess of one year, must be counted. The court thus concludes that while the statutory tolling provision applies to certain portions of time since the enactment of the AEDPA, it does not render Thomas' habeas petition timely filed.

### C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

tolling. *Fahy v. Horn,* 240 F .3d 239, 244 (3d Cir.2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:

**\*4** only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159, *quoting United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998).

In the instant case, Thomas argues that the AEDPA's one-year period of limitation is at odds with the three-year period allowed for filing a Rule 61 motion for post-conviction relief. He contends that because Delaware allows three years in which to file a Rule 61 motion, and petitioners are required to exhaust state remedies before filing habeas petitions in federal court, it is unfair to apply the AEDPA's one-year period of limitation, rather than Delaware's three-year period.

Although Thomas is correct that Delaware generally allows three years in which to file a Rule 61 motion, *see* Super. Ct. R.Crim. P., Rule 61(i)(1), the court is unimpressed by his equitable tolling argument. As explained above, the court has applied § 2244(d)(2) 's tolling provision to exclude the periods of time during which his two post-conviction proceedings were pending before the state courts. These periods of time do not count against Thomas. There is nothing unfair or inequitable in applying the AEDPA's one-year period of limitation to petitioners who wait more than a year before filing a habeas petition in federal court, even if the Delaware rule permits a longer period of time in

which to file Rule 61 motions.

More important, Thomas has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. Indeed, he has failed to offer *any* explanation for the delay. He has not provided the court with any reason why, after the AEDPA was enacted, he waited until December 18, 1996, to file his first Rule 61 motion. He has not explained why, after his second Rule 61 proceedings were completed on November 24, 1997, he waited until August 10, 1998, to file his habeas petition with this court.

In short, the court cannot discern any extraordinary circumstances that warrant applying the doctrine of equitable tolling. Thomas' habeas petition will be dismissed as untimely.

### D. Motion for Appointment of Counsel

In a letter to the court dated April 16, 2000, Thomas inquired respecting appointment of counsel in this matter. The court construes this letter as a motion for appointment of counsel. The Sixth Amendment right to counsel does not extend to habeas proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). Additionally, the court has determined that Thomas' habeas petition will be dismissed as untimely. Accordingly, Thomas' letter dated April 16, 2000, construed as a motion for appointment of counsel, will be denied as moot.

### III. CERTIFICATE OF APPEALABILITY

**\*5** Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 5

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Thomas' habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not debate otherwise. Thomas therefore cannot make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:
1. Thomas' petition for a writ of habeas corpus pursuant to 28 U .S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.
2. Thomas' letter dated April 16, 2000, requesting appointment of counsel, is construed as a motion for appointment of counsel, and so construed, is DENIED as moot.
3. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

D.Del.,2001.
Thomas v. Snyder
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Browne v. CarrollD.Del.,2006.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Cecil BROWNE, Petitioner,
v.
Thomas L. CARROLL, Warden, Respondent.
**No. Civ.A. 04-870-JJF.**

Jan. 24, 2006.

Cecil Browne, Petitioner, pro se.
Loren C. Meyers, Chief of the Appeals Division,
Elizabeth McFarlan, Deputy Attorney General, and
Gregory E. Smith, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

*MEMORANDUM OPINION*
FARNAN, J.
**\*1** Pending before the Court is an Application For
A Writ Of Habeas Corpus Pursuant To 28 U.S.C. §
2254 ("Petition") filed by Petitioner Cecil Browne.
(D.I.1.) For the reasons discussed, the Court will
dismiss the Petition and deny the relief requested.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner lived with his girlfriend Brenda Saunders
at her home in Wilmington, Delaware for
approximately four years, when the events leading
to Petitioner's arrest and conviction unfolded.
During an argument in the early morning hours of
September 4, 1998, Petitioner forced Ms. Saunders
to her knees and forced her to perform fellatio while
holding a knife. Ms. Saunders bit Petitioner causing
him to release her. She then went upstairs.
Petitioner followed Ms. Saunders upstairs and again
attempted to force her to perform fellatio. Petitioner
struck Ms. Saunders, called her derogatory names,

and attempted to have anal and vaginal intercourse
with her.

Petitioner temporarily stopped assaulting Ms.
Saunders while he telephoned his employer. After
completing that phone call, he again tried to force
Ms. Saunders to perform fellatio. According to
Petitioner, the two of them engaged in voluntary
intercourse. Ms. Saunders denied consenting to any
sexual act with Petitioner on September 4, 1998.

Wilmington police arrested Petitioner and charged
him with one count of first degree unlawful sexual
intercourse, two counts of second degree unlawful
sexual intercourse, two counts of attempted second
degree unlawful sexual intercourse, and one count
of possession of a deadly weapon during the
commission of a felony. In October 1998, the State
indicted Petitioner on these same charges, and one
additional charge of aggravated menacing. In
December, while he was in custody, Petitioner was
arrested on two counts of noncompliance with
conditions of bond, and another indictment was
issued in March 1999 in connection with these
charges. The October 1998 and May 1999
indictments were joined pursuant to a motion filed
by the State.

Petitioner was convicted by a jury in September
1999, on three counts of third degree unlawful
sexual intercourse and two counts of attempted third
degree unlawful sexual intercourse (lesser-included
offenses of the indicted charges). The Superior
Court granted Petitioner's motion for acquittal on
the two counts of noncompliance with conditions of
bond, and the jury acquitted Petitioner of the
weapons charge and aggravated menacing.
Petitioner was sentenced to an aggregate of forty
years in prison, suspended after eleven years for
fifteen years of decreasing levels of supervision.

Petitioner appealed, arguing that the Superior Court
erred in: (1) denying his motion for acquittal as to
the two counts of unlawful sexual intercourse in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 2

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

second degree; and (2) refusing his requested jury instruction on the offense of unlawful sexual contact in the third degree. The Delaware Supreme Court affirmed Petitioner's convictions and sentences. *Browne v. State,* 2000 WL 1780761 (Del. Nov. 29, 2000).

*\*2* In May 2002, Petitioner applied for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion" ), alleging that his trial counsel provided ineffective assistance by failing to: (1) disclose his pre-trial counsel's ineffective assistance to the court; (2) raise a speedy trial claim; (3) object to the admission of portions of his taped statements made to police; and (4) object to various illegal pretrial matters. *State v. Browne,* 2002 WL 31260008 (Del.Super.Ct. Oct. 3, 2002). The Superior Court denied Petitioner's Rule 61 motion, concluding that Petitioner's claims either had no merit or were procedurally defaulted. The Delaware Supreme Court affirmed the Superior Court's decision. *Browne v. State,* 2003 WL 21364452 (Del. June 9, 2003).

## II. GOVERNING LEGAL PRINCIPLES

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). Under the AEDPA, a petitioner in custody pursuant to a state court judgment must exhaust remedies available in the state courts before seeking habeas relief from a federal court. 28 U.S.C. § 2254(b), (c); *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999); *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997).

If the state's highest court adjudicates a federal habeas claim on the merits, then a federal court must review the claim under the standard contained in § 2254(d). Section 2254(d) only permits federal habeas relief when the state court's decision was " contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001). When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000), and is only rebuttable if the petitioner presents clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

*\*3* If a petitioner fairly presents a habeas claim to a state's highest court, but the state court refuses to consider the claim because the petitioner failed to comply with an independent and adequate state procedural rule, the claim is deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts,* 228 F.3d at 192. A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999); *Coleman,* 501 U.S. at 750-51.; *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir.1992).

## III. DISCUSSION

Petitioner presents eight grounds [FN1] for habeas relief in his Petition. Specifically, Petitioner

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

contends that: (1) both pretrial counsel and trial counsel provided ineffective assistance; (2) his speedy trial rights were violated; (3) his confession was improperly admitted into evidence at his trial; (4) he was illegally arrested for noncompliance with bond conditions; (5) his October 1998 and March 1999 indictments were illegally joined; (6) the Superior Court failed to grant a mistrial after the jury submitted notes during its deliberations; (7) his sentence is illegal because it violates Delaware's Truth-in-Sentencing Guidelines and *Blakely v. Washington,* 542 U.S. 296 (2004); and (8) there was insufficient evidence to support his conviction and sentence and the trial court erred in failing to grant his request for a lesser included offense instruction on unlawful sexual contact in the third degree. (D.I.2.) Petitioner has exhausted state remedies for all eight claims by presenting them to the Delaware Supreme Court, either on direct appeal or post-conviction appeal.

> FN1. Petitioner actually presents nine grounds for relief, but the Court has combined Claims One and Eight because they both assert ineffective assistance of counsel.

### A. *Petitioner's Claim For Illegal Arrest For Non-Compliance With Bond Conditions*

Petitioner was arrested on September 11, 1998, for his conduct on September 4, 1998, which has been previously described. His Order of Commitment explicitly states that "as a condition of your release on bail, you are ordered to have no contact, direct or indirect with Brenda C. Saunders," and "these conditions must be followed whether you post bail or are in jail." (D.I.22.) On September 15 and 16, 1998, Petitioner sent Ms. Saunders two letters. Shortly thereafter, in December 1998, an arrest warrant issued charging Petitioner with two counts of noncompliance with conditions of bond.

Petitioner contends that his December 1998 arrest was illegal because (1) he was not released on bail at the time he violated the bond conditions, and (2) the Superior Court never held a preliminary (or bail) hearing.[FN2] The Court concludes that

Petitioner's claim is not cognizable on federal habeas review, because it presents issues of state law. 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-8 (1991). Pursuant to 11 Del. C. Ann. § 2109(b), a court may require an accused who is committed in lieu of bail to have no contact with the victim or the victim's family while he is in custody. If the accused fails to comply with the conditions of bond, he shall be arrested. 11 Del. C. Ann. § 2113(a). Further, there is no federal constitutional right to a preliminary hearing. *See Gerstein v. Pugh,* 420 U.S. 103, 118 n. 19 (1975). Although Delaware statutory law grants an accused the right to a preliminary hearing, this right to a preliminary hearing does not apply when the accused is already in custody for another crime. *See* 11 Del. C. Ann. § 1909; *Garner v. State,* 145 A.2d 68 (1958). Accordingly, the Court will dismiss Petitioner's claim of illegal arrest as non-cognizable on federal habeas review.[FN3]

> FN2. Respondents identify a third allegation with respect to the December 1998 arrest: the arrest was illegal because the police improperly questioned him without the presence of counsel. The Court will address this contention in the context of its discussion of Petitioner's ineffective assistance of counsel claims.

> FN3. To the extent Petitioner's claim can be construed as alleging that any delay in holding a bail hearing violated his constitutional rights, the Court concludes that Petitioner's claim is moot in light of his acquittal on the charges for non-compliance with bond conditions. *See Murphy v. Hunt,* 455 U.S. 478, 481-82 (1982).

### B. *Claims Adjudicated on the Merits in State Court*

**\*4** Petitioner's claims for ineffective assistance of counsel, speedy trial violation,[FN4] and insufficient evidence to support his conviction were denied by the Delaware Supreme Court on the merits. *See Browne,* 2001 WL 1780761(direct appeal); *Browne,* 2003 WL 21364452 (post-conviction appeal). Consequently, the Court must review the claims

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 4

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

under § 2254(d)(1) to determine if the Delaware Supreme Court's denial of the claims was contrary to, or an unreasonable application of, United States Supreme Court precedent.

> FN4. Respondents contend that Petitioner's speedy trial claim is procedurally barred. Although the state courts acknowledged that they could have denied this claim as procedurally defaulted, the Delaware Superior Court denied the claim on the merits, and the Delaware Supreme Court affirmed. Accordingly, the Court concludes that it is appropriate to review this claim on the merits under Section 2254(d)(1). *See Harris v. Reed,* 489 U.S. 255, 262 (1989) (holding that "a federal claimant's procedural default precludes federal habeas review ... only if the last state court rendering a judgment in the case rests its judgment on the procedural default"); *Smith v. Freeman,* 892 F.2d 331, 336 (3d Cir.1989) (holding that a claim was not procedurally barred under a certain state procedural rule where the Pennsylvania courts did not rely on the rule and addressed the merits of the claim instead).

### 1. Petitioner's speedy trial claim

Petitioner was arrested on September 11, 1998, and his trial commenced on September 14, 1999. The first scheduled trial date was June 10, 1999. Prior to trial, Petitioner's counsel, a state public defender, was relieved and another public defender, Raymond Radulski, was assigned. On June 1, 1999, Mr. Radulski requested a continuance in order to become familiar with the case. The Superior Court granted the continuance, and the trial was rescheduled to a mutually convenient date for the defense and the prosecution in September 1999.

Based on the one-year between his arrest and trial, Petitioner contends his right to a speedy trial was violated. Petitioner also contends that he was unduly prejudiced by the one-year time frame from his arrest to trial, because potential witnesses

moved and could not testify at his trial.

The right to a speedy trial is guaranteed by the Sixth Amendment. *See* U.S. Const. amend. VI. The United States Supreme Court has directed courts to consider four factors when analyzing a speedy trial claim: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530 (1972). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

The Delaware Superior Court analyzed and denied Petitioner's speedy trial claim under *Barker,* and the Delaware Supreme Court affirmed the decision after concluding that Petitioner had not been prejudiced by the one-year time period from his arrest to trial. The Court has reviewed the record and concludes that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, *Barker.* Although Petitioner filed his own *pro se* motion stating that he opposed the June 1999 continuance, which is one *Barker* factor, the Court concludes that the Delaware Supreme Court was correct when it concluded that Petitioner was not actually prejudiced by the delay. Although Petitioner's attorney was replaced on the eve of trial in June 1999, and Mr. Radulski requested a continuance to allow him sufficient time to prepare the case for trial, the trial was only delayed for three months, a period of time which benefitted Petitioner by allowing his trial counsel to become informed about the case and prepare for trial.

*\*5* As for Petitioner's contention that potential witnesses were unable to testify because of the delay of the trial for three months, the Court finds that, the record demonstrates that the two potential witnesses did not testify because Ms. Saunders and her family threatened them. Further, these witnesses would have testified regarding Ms. Saunders' alleged history of abusing Petitioner and did not have any information regarding the charges at issue in the trial. On this record, the Court concludes that the Delaware Supreme Court's denial of Petitioner's speedy trial claim was neither contrary to, nor an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

unreasonable application of, *Barker,* and therefore, the Court will dismiss the speedy trial claim.

2. Petitioner's claim that the evidence was insufficient to establish attempted second degree unlawful sexual intercourse and the trial court erred in failing to give a jury instruction on a lesser offense

Petitioner alleges that Counts V and VI of the Indictment, charging him with attempted second degree unlawful sexual intercourse, should have been dismissed at the end of the prosecution's case for lack of sufficient evidence. Counts V and VI charge:

CECIL BROWNE ... did intentionally attempt to engage in sexual intercourse with Brenda Saunders by attempting to place his penis in her anus [and vagina] without her consent and the defendant inflicted physical injury upon the victim on the occasion of the crime which acts, under the circumstances as he believed them to be, constituted a substantial step in the course of conduct planned to culminate in the commission of Unlawful Sexual Intercourse in the Second Degree, in violation of 11 Del. C. Section 774.

Petitioner contends his conduct did not amount to a substantial step toward the commission of the offense of unlawful sexual intercourse because he did not have an erection at the time, and therefore, was incapable of performing intercourse.

The United States Supreme Court precedent governing Petitioner's insufficient evidence claim is *Jackson v. Virginia,* 443 U.S. 307 (1979). Pursuant to *Jackson,* "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

To prove attempted unlawful sexual intercourse in the second degree, the prosecution had to establish that Petitioner attempted to intentionally engage in sexual intercourse with Ms. Saunders without her consent and that he inflicted physical, mental, or emotional injury upon her. *See* 11 Del. C. Ann. §

774(1)(a)(Repealed 1998). "A person is guilty of an attempt to commit a crime if the person: (2) intentionally does nor omits to do anything which, under the circumstances as the person believes them to be, is a substantial step in a course of conduct planned to culminate in the commission of the crime by the person." 11 Del. C. Ann. § 531(2). The term "substantial step" is defined as "an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which the defendant is charged with attempting." 11 Del. C. Ann. § 532.

**\*6** At trial, Ms. Saunders testified that, after the second episode of oral sex, Petitioner "flipped [her] over and tried to put his penis in [her] rectum." (D.I. 14, State's Ans. Br. in *Browne v. State,* No.598,1999, at 13.) She also testified that Petitioner "was trying to force his penis into [her] vagina" and that "he was applying pressure with his penis." *Id.* at 13-14. Ms Saunders further testified that "[h]e was really trying to-it wasn't erect, so he was almost like trying to stuff it into my vagina." *Id.* Finally, at the conclusion of her testimony, Ms. Saunders stated that she did not consent to any of the sexual acts that occurred on September 4, 1998.

Ms. Saunders also described how Petitioner repeatedly hit her on the top of her head, flipped her, and spanked her on the buttocks. Annette Carter, Ms. Saunders's sister, testified that the following day she observed bruises on her sister's right shoulder, legs, and buttocks.

In light of Ms. Saunders's testimony, the Court concludes that, even though Petitioner testified that he and Ms. Saunders engaged in consensual sexual acts, Ms. Saunders's testimony was sufficient to enable the jury to conclude that Petitioner attempted to perform non-consensual vaginal and anal intercourse with her and that he injured her. *See Paullet v. Howard,* 634 F.2d 117, 118 (3d Cir.1980) (noting that, when there are inconsistencies between the defendant's and prosecuting witness' testimonies, the resolution of the case depends upon the jury's findings on credibility). Thus, the Court concludes that the Delaware Supreme Court's denial of Petitioner's insufficient evidence claim was neither contrary to, nor an unreasonable application

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

of, *Jackson.*

In a related claim, Petitioner challenges the refusal of the trial judge to instruct the jury on third degree unlawful sexual contact as a lesser included offense of the two charges of attempted second degree unlawful sexual intercourse. Respondents contend that the Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent because there is no clearly established federal law requiring a jury instruction on lesser-included offenses in non-capital cases. (D.I. 20, at 22.)

In *Beck v. Alabama,* 447 U.S. 625, 638 (1980), the Supreme Court held that due process requires a court to give a jury instruction on lesser included offenses in capital cases when it is supported by the evidence. However, in *Beck,* and thereafter in *Schad v. Arizona,* 501 U.S. 624 (1991), the Supreme Court left open the question as to whether *Beck* should apply to jury instructions in non-capital cases; however, the Third Circuit has extended *Beck* to non-capital cases. *See, e.g., Kontakis v. Beyer,* 19 F.3d 110, 119 & n. 14 (3d Cir.1994); *Vujosevic v. Rafferty,* 844 F.2d 1023, 1027 (3d Cir.1988)(citing cases); D. Hall, *The "Third Option": Extending the Lesser Included Offense Doctrine to the Non-Capital Context,* 29 Hofstra L.Rev. 1333, 1350-59 (2001).

*7 The Court concludes that based on the evidence adduced at Petitioner's trial, a jury instruction on unlawful sexual contact in the third degree was not required. At the time of Petitioner's arrest, under Delaware law, unlawful sexual intercourse in the second degree involved non-consensual sexual intercourse combined with physical, emotional, or mental injury to the victim, and third degree unlawful sexual intercourse involved non-consensual sexual intercourse without injury. *See* 11 Del. C. Ann. §§ 773, 774 (repealed 1998). In contrast, unlawful sexual contact in the third degree involved a person having sexual contact with another person or causing the victim to have sexual contact with the person or a third person and with the knowledge that the contact is either offensive to the victim or occurs without the victim's consent. 11 Del. C. Ann. § 767.

Further, Delaware law provided that "sexual intercourse" included any act of fellatio or cunnilingus regardless of whether penetration [FN5] occurs, as well as "any act of physical union of the genitalia or anus of [one] person with the mouth, anus, or genitalia of another person. It occurs upon any penetration, however slight." 11 Del. C. Ann. § 761(e). In contrast, allegations of "sexual contact" included the intentional touching of another person's anus, breasts, buttocks, or genitalia, as well as the intentional touching of another person with his or her anus, breast, buttocks or genitalia. 11 Del. C. Ann. § 761(f).

> FN5. Penetration includes placing genitalia or any sexual device inside the mouth of another person. 11 Del. C. Ann. § 761(g).

The Superior Court trial judge denied Petitioner's request for an instruction on third degree unlawful sexual contact after determining that the evidence established either consensual sexual intercourse, which would warrant an acquittal, or non-consensual sexual intercourse or attempted non-consensual sexual intercourse, which would warrant a conviction for second degree unlawful sexual intercourse or attempted second degree unlawful sexual intercourse. [FN6] The trial judge concluded that there was no evidence upon which the jury could rationally acquit Petitioner of second degree unlawful sexual intercourse or attempted second degree unlawful sexual intercourse, but convict him of unlawful sexual contact. (D.I. 14, App. to State's Brief in *Browne v. State,* No. 598, 1999, at B-28 to B-29.)

> FN6. Ms. Saunders testified that Petitioner's penis was not erect.

During the trial, Petitioner testified that he and Ms. Saunders "got on the bed and ... just started having sex on this, just regular old sex." *Id.* at B-26. With the element of sexual intercourse established, or at least attempted sexual intercourse, the Court concludes that the Superior Court's denial of the request for a lesser included offense instruction by the trial judge was reasonable. Accordingly, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 7

Court concludes that Petitioner's claim based on the Superior Court's refusal to charge the jury on unlawful sexual contact does not warrant federal habeas relief.

### 3. Petitioner's ineffective assistance of counsel claims

To prevail on his ineffective assistance of counsel claims, Petitioner must satisfy the two-pronged standard enunciated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984) and demonstrate that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) counsel's deficient performance prejudiced the petitioner's defense; in other words, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687-88, 692-94; *See Wiggins v. Smith,* 539 U.S. 510 (2003). When applying the *Strickland* standard, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

#### a. Conflict of interest

*8 Approximately one week before the originally scheduled trial date, in June 1999, Raymond Radulski was substituted as Petitioner's counsel, replacing Diane Clark-Streett. Both attorneys were employed by the State Office of the Public Defender. Petitioner contends that Mr. Radulski had a conflict of interest which prevented him from raising the issue of Ms. Streett's deficiencies to the trial court or to the Delaware Supreme Court on direct appeal. Specifically, Petitioner contends that Mr. Radulski was trying to "protect" Ms. Streett. Although Petitioner presents this claim in the context of a "conflict of interest," the Court will treat it as an ineffective assistance of counsel claim.

It is well-established that an attorney does not provide ineffective assistance by failing to raise improper or meritless claims. *See Werts v. Vaughn,* 228 F.3d 178, 203 (3d Cir.2000). In the state courts

of Delaware, ineffective assistance of counsel claims are properly raised in a Rule 61 motion for post-conviction relief, not during a trial or on direct appeal. *See Thomas v. Carroll,* 2004 WL 758344, at *5 (D.Del. Jan. 30, 2004); *Desmond v. State,* 654 A.2d 821, 829 (Del.1994)(collecting cases). Thus, the Court concludes that any "failure" to raise the issue of the ineffectiveness of Ms. Streett's representation during trial or on direct appeal does not support an ineffective assistance of counsel claim under *Strickland'* s first prong.

Additionally, the Court concludes that Petitioner remedied any failure to present this claim by raising it to the Delaware Superior Court in his Rule 61 motion. Accordingly, the Court concludes that Petitioner cannot establish prejudice under *Strickland,* and therefore, the Court concludes Petitioner's claim of ineffective assistance of counsel based on a "conflict of interest" argument does not warrant federal habeas relief under § 2254(d)(1).

#### b. Failure to investigate the case

Petitioner next contends that both attorneys who represented him failed to investigate a list of potential witnesses who would have testified that Ms. Saunders was the "real abuser" in the relationship, and he was the victim. (D.I. 1, at p. 52.) To succeed on claim alleging a failure of counsel to investigate potential witnesses, Petitioner must show how their testimony would have been favorable and material. *See United States v. Gray,* 878 F.2d 702, 711 (3d Cir.1989); *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982). Petitioner does not contend that any of the noted witnesses could have testified as to the events of September 4, 1998, but rather, Petitioner asserts that the witnesses would have testified as to prior bad acts of Ms. Saunders and various attacks on her character. Respondents contend that this type of testimony would have been inadmissible under Delaware Rule of Evidence 608(b). *See* Del. R. Evid. 608(b); *Weber v. State,* 457 A.2d 674, 680 (Del.1983) ("The limitation created by Rule 608(b) is designed to avoid minitrials into the bad acts of witnesses which would require the use of extrinsic

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

evidence to prove such acts."). Because the Court agrees that the testimony identified by Plaintiff would have been inadmissible under Rule 608(b) and irrelevant to the events that occurred on September 4, 1998, the Court concludes that the proffered testimony would have not have been material to Petitioner's defense, and therefore, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* to deny Petitioner's ineffective assistance of counsel claim.

### c. Failure to raise a speedy trial claim

**\*9** Petitioner also contends that his attorneys were ineffective for failing to file a speedy trial motion. Because the Court has previously concluded that Petitioner's speedy trial claim is meritless, the Court concludes that neither attorney provided ineffective assistance by failing to raise this non-meritorious claim. Therefore, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* to deny Petitioner's ineffective assistance of counsel claim.

### d. Failure to challenge the September 1998 indictment as illegal

Petitioner next contends that both his attorneys should have challenged his October 1998 indictment as being illegal. Specifically, Petitioner contends that he was indicted on a charge of aggravated menacing, even though he was never arrested for that offense. Under Delaware law, Petitioner's prosecution for aggravated menacing could be initiated by indictment or complaint. *See Turner v. State,* 812 A.2d 900 (Table), 2002 WL 31796224, at \*1 n. 4 (Del. Dec. 13, 2002). Thus, the Court concludes that any challenge to the indictment by Petitioner on these grounds would have been meritless, and therefore, neither of Petitioner's attorneys provided ineffective assistance by failing to raise this non-meritorious objection to the indictment. Accordingly the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* to deny Petitioner's ineffective assistance of counsel claim.

### e. Failure to object to or move for a mistrial due to the Superior Court's reaction to two jury notes

During its deliberations, the jury sent the Superior Court judge two notes. The first note requested certain portions of Petitioner's testimony regarding what happened in the kitchen and dining room to be read back to the jury. The second note asked how long the jury needed to deliberate before it would be declared a hung jury. Petitioner contends that his trial counsel provided ineffective assistance by failing to object to the Superior Court's denial of the first request, and by failing to object to the court's slow response to the hung jury question.

"A trial court has broad discretion in deciding whether to accede to a jury's request for a reading of testimony." *U.S. v. Bertoli,* 40 F.3d 1384, 1401 (3d Cir.1994)(citing *United States v. Zarintash,* 736 F.2d 66, 69-70 (3d Cir.1984)). Courts have recognized two legitimate reasons for denying a jury request for the read back of testimony: a jury may give undue weight to the portion of testimony read back to it, and requiring a court reporter to produce written transcripts would cause substantial delay to the orderly administration of the trial. *Taylor v. State,* 685 A.2d 349, 350 (Del.1996) (citing *United States v. Rabb,* 453 F.2d 1012, 1013-14 (3d Cir.1971).

In Petitioner's case, there is no indication that any court reporter notes were ready at the time of the jury request. Further, the jury requested Petitioner's testimony regarding the acts that occurred in the kitchen and dining room. Petitioner and Ms. Saunders both described the act of fellatio that occurred in the dining room while Petitioner was holding a knife. Their testimonies differed, however, on the issue of consent, and on how Petitioner obtained the knife and whether or not he was threatening to use the knife. Given the fact that Petitioner was acquitted of the weapons charge, and that the jury did not find him guilty of first degree unlawful sexual intercourse (which involves the use of a deadly weapon), the Court concludes that Petitioner was not prejudiced by any failure of trial counsel to object to the Superior Court's denial of the jury's transcript request.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*10** With respect to Petitioner's contention regarding the jury's second note, a judge may properly instruct a deadlocked jury to continue deliberations and attempt to arrive at a verdict. *Government of Virgin Islands v. Gereau,* 502 F.2d 914, 936 (3d Cir.1974). In Petitioner's case, after sending the note to the judge, the jury continued to deliberate and eventually returned a verdict acquitting Petitioner of multiple charges and finding him guilty of lesser-included offenses of the remaining charges. In these circumstances, the Court cannot conclude that Petitioner was prejudiced by the trial court's treatment of the jury's second note, and therefore, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* to deny Petitioner's claims.

f. Failure to prevent the introduction of Petitioner's
September 1998 statements to the police

Upon his arrest in September 1998, the police videotaped the reading of Petitioner's rights under *Miranda v. Arizona,* 384 U.S. 436 (1966) and his confession, in which he admitted having sexual relations with Ms. Saunders and corroborated some of Ms. Saunders' other allegations. Petitioner contends that his confession was illegally obtained because he did not know that he was being videotaped, and therefore, the failure of his pre-trial counsel to file a timely motion to suppress the videotaped confession constituted ineffective assistance. Petitioner also contends that his trial counsel should have raised this issue on appeal.

The Court concludes that Petitioner cannot demonstrate ineffective assistance of counsel under the *Strickland* standard based on any failure by his attorneys to file a motion to suppress as suggested by Petitioner. The fact that Petitioner may have been unaware that his confession was being videotaped does not warrant suppression of his statement where, as here, he was properly Mirandized and his statement was voluntarily given.

As for Petitioner's contention that certain letters he wrote to Ms. Saunders were illegally admitted into evidence and his counsel should have objected to their admission and raised this issue on appeal, the

Court likewise concludes that Petitioner has not demonstrated that his attorneys were ineffective for not doing what Petitioner suggests. The letters were not obtained from Petitioner, but given to the authorities by Ms. Saunders. The letters were clearly relevant to the charges of noncompliance with bond conditions, and therefore, the Court concludes that there was no legal basis for Petitioner's attorneys to challenge their admission into evidence. Further, the Court concludes that Petitioner cannot satisfy the prejudice prong of the *Strickland* standard, because he was acquitted of the two charges of noncompliance with bail conditions which were premised on the letters he sent to Ms. Saunders. Accordingly, the Court concludes that Petitioner's attorneys did not provide ineffective assistance of counsel, and the Delaware Supreme Court reasonably applied *Strickland* to deny Petitioner's ineffective assistance of counsel claim.

g. Failure to object to the admission of his
December 1998 statement to the police

**\*11** Petitioner's final allegation of ineffective assistance of counsel stems from his December 1998 arrest for noncompliance with bond conditions. Petitioner contends that because his pretrial counsel was representing him since September 1998, she should have been present when the police questioned him regarding his December 1998 arrest. Petitioner contends that both his attorneys were ineffective for failing to object to the December 1998 police questioning of Petitioner without the presence of his attorney.

The Supreme Court has recognized that "[t]he Sixth Amendment right [to counsel] is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin,* 501 U.S. 171, 175 (1991); *see Texas v.. Cobb,* 532 U.S. 162 (2001). In this case, the Court finds no indication in the record that Petitioner invoked his right to counsel under *Miranda v. Arizona,* 384 U.S. 436 (1966) during his December 1998 arrest and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the booking procedures that followed. Thus, his representation by his pre-trial counsel for the October 1998 sex offense charges did not extend to his arrest for the noncompliance of bond charges. Accordingly, the Court concludes that neither of Petitioner's attorneys were ineffective for failing to raise this issue, and therefore, the Delaware Supreme Court appropriately applied *Strickland* to deny Petitioner relief.

### C. *Claims Procedurally Barred In The State Court*

In his post-conviction appeal, Petitioner presented to the Delaware Supreme Court his claims that: (1) his confession was improperly admitted into evidence, (2) his October 1998 and March 1999 indictments were illegally joined, (3) the Superior Court erred in failing to grant a mistrial after the jury submitted notes after its deliberations, and (4) his sentence is illegal under *Blakely* and Delaware's Truth-In-Sentencing Guidelines. The Delaware Supreme Court concluded that Petitioner's claims were procedurally defaulted under Rule 61(i)(3) and (4) and denied Petitioner relief.

Superior Court Rule 61 constitutes an independent and adequate state procedural ground precluding federal habeas review absent a showing of cause for, and prejudice resulting from, the procedural default. *Maxion v. Snyder,* 2001 WL 848601, at *10 (D.Del. July 27, 2001). To demonstrate cause for a procedural default, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule ." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, Petitioner must show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

**\*12** Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards,* 529 U.S. at 451; *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). The miscarriage of justice exception

applies only in extraordinary cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). To establish actual innocence, a petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo,* 513 U.S. 298, 326 (1995); *Werts,* 228 F.3d at 193.

#### 1. Claim for improper admission of videotaped confession and claim that the trial court erred in failing to declare a mistrial

Petitioner asserts ineffective assistance of counsel as cause for procedurally defaulting his claim that his videotaped confession was improperly admitted into evidence and his claim that the trial court erred in failing to declare a mistrial. Ineffective assistance of counsel may constitute cause for a procedural default, but only if counsel's deficiencies rise to the level of an independent Sixth Amendment violation. *Coleman,* 501 U.S. at 745; *Edwards v. Carpenter,* 529 U.S. 446, 451-52 (2000); *Murray v. Carrier,* 477 U.S. 478, 488-89 (an allegation of constitutionally ineffective assistance of counsel as cause for a procedural default in state court must itself be independently exhausted). The Court has previously concluded that neither of Petitioner's attorneys provided constitutionally ineffective assistance of counsel. Accordingly, the Court concludes that Petitioner has failed to establish cause for his procedural default, and therefore, the Court need not discuss prejudice.

In addition, the Court concludes that Petitioner has made no colorable claim of actual innocence, and therefore, Petitioner cannot establish that a miscarriage of justice will occur if the Court does not review the merits of his claims. Because federal habeas review of Petitioner's claim is procedurally barred, the Court will dismiss the claim.

#### 2. Claim for illegally joined indictments

In October 1998, Petitioner was indicted on seven

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

charges: five unlawful sexual intercourse offenses, possession of a deadly weapon during the commission of a felony offense, and aggravated menacing. Petitioner was indicted on two additional charges for noncompliance with conditions of bond in December 1998. The two indictments were joined upon the prosecutor's motion in May 1999. Petitioner contends that the joinder of the two separate indictments was illegal.

During Petitioner's direct appeal, he challenged two counts of the May 1999 indictment charging him with unlawful sexual intercourse in the second degree. In his Rule 61 motion, and on post-conviction appeal, Petitioner challenged the May 1999 indictment on the ground that joining the October 1998 indictment and the March 1999 indictment was illegal. On post-conviction appeal, the Delaware Supreme Court denied the claim as procedurally defaulted under Rule 61(i)(4) because Petitioner should have raised the claim when he challenged the indictment on direct appeal.

*13 After reviewing the record, the Court concludes that Petitioner has not demonstrated cause and prejudice excusing his procedural default. First, Petitioner does not assert that any external factor prevented him from presenting this issue to the Delaware Supreme Court during his direct appeal. Second, Petitioner cannot demonstrate prejudice because he was acquitted on the two charges of noncompliance with bond. In addition, Petitioner has not shown that a miscarriage of justice will result if the Court declines to examine the merits of his claim. Accordingly, the Court concludes that federal habeas review of Petitioner's claim is procedurally barred, and therefore, the Court will dismiss Petitioner's claim.

### 3. Claim for illegal sentencing under *Blakely* and Delaware's Truth-In-Sentencing Guidelines

Petitioner next contends that his sentence is illegal because it exceeds the limit imposed by Delaware's Truth-in-Sentencing Guidelines ("TIS") and violates *Blakely v. Washington,* 542 U.S. 296 (2004) . Petitioner does not assert any cause for his failure to raise this claim in his direct appeal. The Court

acknowledges that Petitioner's citation to *Blakely* may be an attempt to demonstrate cause because *Blakley* was decided after his trial and direct appeal. However, the Delaware Supreme Court has held that *Blakely* does not apply to Delaware's sentencing system. *Benge v. State,* 862 A.2d 385 (Table), 2004 WL 2742431, at *1 (Del. Nov. 12, 2004) ("*Blakely* does not impact Delaware's sentencing scheme because the SENTAC guidelines are voluntary and non-binding."). Further, *Blakely* does not apply retroactively to cases that became final on direct review prior to its issuance. *See Lloyd v. United States,* 407 F.3d 608, 613-15 (3d Cir.2005) (holding that *United States v. Booker,* 543 U.S. 220 (2005), which applied the *Blakely* rule to the federal sentencing guidelines, is not retroactively applicable to cases on collateral review). Thus, the Court concludes that Petitioner has failed to demonstrate cause justifying his procedural default, and therefore, the Court need not consider whether Petitioner has established prejudice. In addition, the Court concludes that Petitioner has not alleged a colorable claim of innocence, and therefore, a miscarriage of justice will not result if the Court declines to review the merits of his claim. Accordingly, the Court concludes that federal habeas review of Petitioner's claim is procedurally barred, and therefore, the Court will dismiss Petitioner's claim.

### IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would debate: (1) whether the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

**\*14** The Court has concluded that the claims in Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 are either procedurally barred, noncognizable, or do not warrant relief under § 2254(d)(1). The Court is persuaded that reasonable jurists would not find these conclusions to be debatable, and therefore, the Court declines to issue a certificate of appealability.

### IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be dismissed and the relief requested therein will be denied. In addition, his " Motion to Appoint Counsel and for an Evidentiary Hearing" will be denied as moot. (D.I.24.)

An appropriate Order will be entered.

### *ORDER*

At Wilmington, this *24* day of January, 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Petitioner Cecil Browne's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (D.I.1) is *DISMISSED,* and the relief requested therein is *DENIED.*

2. Petitioner's Motion for Appointment of Counsel and Evidentiary Hearing (D.I.24) is *DENIED* as moot.

3. The Court declines to issue a certificate of appealability, because Petitioner has failed to satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2006.
Browne v. Carroll

Not Reported in F.Supp.2d, 2006 WL 167549 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:04cv00870 (Docket) (Jul. 15, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

612 A.2d 158                                                                    Page 1

612 A.2d 158, 1992 WL 183086 (Del.Supr.)
**(Cite as: 612 A.2d 158)**

Floyd v. StateDel.,1992.(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Larry D. FLOYD, Petitioner-Below, Appellant,
v.
STATE of Delaware, Plaintiff-Below, Appellee.
**No. 194,1992.**

Submitted: July 6, 1992.
Decided: July 13, 1992.
Rehearing Denied July 30, 1992.

Court Below: Superior Court of the State of Delaware in and for Sussex County, Cr. A. Nos. S88-01-0142R2,      S88-01-0143R2,      and S88-01-014SR2.
Superior Court, Sussex County.

AFFIRMED.

Before VEASEY, C.J., and HORSEY and HOLLAND, JJ.

### ORDER

*1 This 13th day of July, 1992, it appears to the Court that:

1) The State has moved, pursuant to Supreme Court Rule 25(a), that this Court affirm the judgment of the Superior Court which denied petitioner's second motion for post-conviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61"). The State contends that it is manifest on the face of Floyd's opening brief that the appeal is without merit. We agree and affirm.

2) On January 24, 1989, Larry D. Floyd ("Floyd"), appellant/petitioner below, was convicted by a jury for first degree unlawful sexual intercourse, second

degree burglary, and criminal mischief. On direct appeal, this Court affirmed his convictions and sentence. *Floyd v. State,* Del.Supr., No. 104, 1989, Holland, J. (Nov. 6, 1989) (ORDER).

3) On November 1, 1991, Floyd filed his first motion for post-conviction relief pursuant to Rule 61 , claiming ineffective assistance of counsel during pretrial, trial, and appellate proceedings. After an evidentiary hearing, the Superior Court denied the motion. This Court dismissed Floyd's appeal of the Superior Court decision since the notice of appeal was not filed within the thirty day period mandated by 10 *Del.C.* § 147 and Supreme Court Rule 6. *Floyd v. State,* Del.Supr., NO. 18, 1992, Holland, J. (Feb. 12, 1992) (ORDER).

4) On April 20, 1992, Floyd filed his second motion for post-conviction relief in the Superior Court contending: 1) that he was denied the right to effective assistance of counsel during all proceedings prior to the first Rule 61 proceeding; 2) that he was denied the right to effective assistance of counsel during the first Rule 61 proceeding; and 3) that the trial court abused its discretion by denying his first motion for post-conviction relief. By order dated May 4, 1992, the Superior Court denied Floyd's second motion on the grounds that a Rule 61 motion for post-conviction relief cannot be used, in the first instance, to attack a previous post-conviction relief proceeding. Rather, a Rule 61 motion for post-conviction relief is the procedure by which a person in custody or subject to future custody may challenge a final judgment of conviction by a trial court. Super.Ct.Crim.R. 61(a)(1); *Flamer v. State,* Del.Supr., 585 A.2d 736, 745 (1990). We agree and address each of Floyd's challenges below.

4) First, Floyd claims that he was denied the right to effective assistance of counsel during all proceedings prior to his first motion for post-conviction relief. The Superior Court addressed and rejected Floyd's claims in its opinion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

612 A.2d 158

612 A.2d 158, 1992 WL 183086 (Del.Supr.)
**(Cite as: 612 A.2d 158)**

Page 2

dated December 11, 1991, denying his first Rule 61
motion. In order for this Court to consider this
claim, therefore, Floyd must show that
reconsideration is warranted in the "interests of
justice." Super.Ct.Crim.R. 61(i)(4). Since no
such showing has been made, this claim is barred
pursuant to the former adjudication bar of Rule
61(i)(4).

5) As to Floyd's second contention, it is settled law
that there is no constitutional right to counsel during
post-conviction proceedings. *Ross v. Moffitt,* 417
U.S. 600 (1974). This Court has held that absent
such a Sixth Amendment right, a defendant may not
bring a claim of ineffective assistance of counsel.
*Shipley v. State,* Del.Supr., 570 A.2d 1159, 1166
(1990). Therefore, Floyd's contention that he was
denied the right to effective assistance of counsel in
connection with the first Rule 61 proceeding is
without merit.

*2 6) Finally, Floyd's contends that the Superior
Court abused its discretion by denying his first Rule
61 motion. Since this claim was not presented to
the Superior Court in his second Rule 61 motion, it
will not be considered on appeal. Supr.Ct.R. 8.

7) Accordingly, it is manifest on the face of
appellant's opening brief that his appeal is without
merit and meets the criteria for summary affirmance
established by Supreme Court Rule 25(a)(i)-(iii).

NOW, THEREFORE, IT IS ORDERED that the
State's motion to AFFIRM be, and the same hereby
is, GRANTED. The judgment of the Superior
Court is AFFIRMED.

Del.,1992.
Floyd v. State
612 A.2d 158, 1992 WL 183086 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WAYNE A. CASSIDY,                    :
                                     :
          Petitioner,                :
                                     :
     v.                              :   Civil Action No. 89-571-JJF
                                     :
WALTER W. REDMAN, CHARLES M.         :
OBERLY, III and CHARLES E.           :
BUTLER,                              :
                                     :
          Respondents.               :

-----------------------------------------------

Wayne A. Cassidy.  Pro Se Petitioner.

Loren C. Meyers, Deputy Attorney General, Department of Justice,
Wilmington, Delaware.  Attorney for Respondents.

-----------------------------------------------


### MEMORANDUM OPINION


January 7, 1992

Wilmington, Delaware

*Joseph J Farnan Jr*
**FARNAN, District Judge**

In November, 1988, pursuant to a plea agreement, petitioner Wayne A. Cassidy ("Cassidy") pled guilty in the Superior Court of the State of Delaware for New Castle County to nine counts of second degree burglary. In January, 1989, petitioner was sentenced to a total of thirty-six years imprisonment. Petitioner's post-sentencing motion to withdraw his guilty plea was subsequently denied. <u>Cassidy v. State</u>, No. 286, 1989 (Del. Aug. 8, 1989). Presently before the Court is Petitioner's Motion for Summary Judgment.

## I.    **BACKGROUND**

On November 16, 1988, Cassidy entered into a plea agreement. Under the terms of the agreement, Cassidy agreed to plead guilty to nine counts of second degree burglary, in return for a recommendation by the State that the total sentence not exceed twenty years. In addition, the State agreed to dismiss one count of burglary, and not prosecute Cassidy for ten other burglary counts for which he had not yet been indicted.

The written guilty plea form executed by Cassidy indicated that Cassidy was subject to a maximum imprisonment of 120 years, the maximum sentence on each count being twenty years. On the guilty plea form, Cassidy also indicated that no promise was made to him concerning the length of the sentence that would actually be imposed by the sentencing judge.

On January 20, 1989, Cassidy was sentenced to a total of thirty-six years imprisonment. Cassidy subsequently moved to withdraw his guilty plea pursuant to Superior Court Criminal Rule 61. Cassidy's motion was denied because the Superior Court concluded that Cassidy was properly advised of the maximum possible sentence he could receive for his plea, and that no promise was made to him as to the actual sentence he would receive.

## II.  ISSUES

In his habeas corpus petition, Cassidy claims that the sentence imposed by the Superior Court violated the terms of the plea agreement. He also claims error on the ground that he was not advised at his sentencing that he could not withdraw his plea if the court decided not to impose the recommended sentence.

Cassidy has presented his claims to the Supreme Court of the State of Delaware, thereby exhausting his state remedies. See Castille v. Peoples, 489 U.S. 346 (1989).

Cassidy argues that the Superior Court should have advised him prior to sentencing of its decision not to accept the recommended sentence and permitted him to withdraw his plea of guilty. However, in his claim for relief, Cassidy asserts that he does not wish to withdraw his plea of guilty, but seeks a reduction of his sentence to conform with the sentence he bargained for in the plea agreement.

Cassidy's contention regarding the alleged violation of the plea agreement is based on his belief that he received sixteen more years than he bargained for, however, the plea agreement sets

out what Cassidy was promised: (1) one count of burglary would be dismissed; (2) petitioner would not be prosecuted for ten other burglary counts for which he had not yet been indicted; and (3) the prosecutor would recommend a total term of imprisonment not to exceed twenty years. The Court concludes petitioner received all three.

Petitioner now argues that the prosecutor's agreement to recommend a sentence of not more than twenty years was a guarantee that he would actually receive a sentence of twenty years or less. However, petitioner acknowledged when he executed the guilty plea form that no promise was made to him concerning the length of the sentence that he would actually receive, and in his habeas petition, petitioner acknowledged that the Superior Court is not bound by the sentencing recommendation of the prosecutor, although he notes that courts commonly follow such a recommendation. Habeas Petition, at 6.

As to Cassidy's other claim, there is no authority which would allow a defendant to withdraw his plea of guilty because a Court imposes a sentence longer than that recommended by the prosecution. For this reason, the Court concludes that Cassidy's petition fails to state a cause of action under 28 U.S.C. §2254. A court is not obligated to accept a recommendation as to sentencing in a plea bargaining context unless the court has agreed or consented to a specific sentence. Jones v. Petrovsky, 631 F.2d 595, 597 (8th Cir. 1980). In sentencing Cassidy, the court declined to accept the prosecutor's recommendation as to sentence.

On these facts, Cassidy had no right to withdraw his guilty plea.[1]

### III. <u>CONCLUSION</u>

For the reasons discussed, petitioner's habeas petition will be dismissed, and petitioner's motion for summary judgment will be denied as moot.

An appropriate Order will be entered.

---

1. The Court notes that the instant case does not involve a situation where the defendant filed a motion to withdraw his plea of guilty prior to sentencing, but was denied permission. <u>See United States ex rel. Culbreath v. Rundle</u>, 466 F.2d 730 (3d Cir. 1972). Such a factual situation might compel a different result. <u>See Id</u>.

4

LEXSEE 1991 DEL. LEXIS 66

**HERBERT L. ADAMS, Defendant Below, Appellant, v. STATE OF DELA-
WARE, Plaintiff Below, Appellee**

**No. 420, 1990**

**Supreme Court of Delaware**

**1991 Del. LEXIS 66**

**January 30, 1991, Submitted
February 15, 1991, Decided**

**NOTICE:** THIS OPINION HAS NOT BEEN RE-
LEASED FOR PUBLICATION IN THE PERMANENT
LAW REPORTS. UNTIL RELEASED IT IS SUBJECT
TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** [*1] Released for Publi-
cation March 5, 1991. Mandate.

**PRIOR HISTORY:** Court Below: Superior Court of the
State of Delaware in and for New Castle County; Cr. A.
Nos. P87-04-1056R1.

**DISPOSITION:**

AFFIRMED.

**JUDGES:**

Christie, Chief Justice, Horsey, and Moore, Justices.

**OPINION BY:**

HORSEY

**OPINION:**

ORDER

This 15th day of February, 1991,

(1) Pursuant to Supreme Court Rule 25(a), the State
has moved to affirm the judgment of the Superior Court
denying appellant's petition for postconviction relief on
the ground that it is manifest on the face of appellant's
opening brief that the appeal is without merit. We agree.

(2) In May 1987, appellant Herbert L. Adams was
indicted on a charge of first degree murder in violation of
11 Del. C. § 636(a)(1) in intentionally causing the death
of Dorothy Ragin by strangulation. In April 1988, Ad-

ams, represented by counsel, pled guilty before Superior
Court to manslaughter, a Class B felony, pursuant to a
plea agreement with the State, approved by counsel and
signed by defendant. In August 1988, Adams was sen-
tenced by Superior Court to thirty years' imprisonment.
The court imposed as a further condition of sentence that
[*2] during the first fifteen years of imprisonment the
Department of Correction should not permit Adams to be
furloughed or be allowed to participate in work release or
supervised custody. 11 Del. C. § 4204(k). (Subsection
(k) was enacted into law June 17, 1980 at the time of the
enactment of a Supervised Custody Program, 11 Del. C.
§ 6539, by 62 Del. Laws, c. 259.)

(3) Over two years later, in June 1990, Adams filed
a motion in Superior Court for postconviction relief un-
der Rule 61. By his motion and amended petition, Adams
sought a reduction in his sentence only to the extent of
removing from it the conditions imposed by the Court
under section 4204(k). He did not seek to withdraw his
guilty plea. See Super. Ct. R. 32(d), as amended. Supe-
rior Court denied Adams' motion on procedural grounds
as well as on the merits; and Adams then docketed this
appeal. The State has moved to affirm the judgment on
the merits.

(4) Assuming arguendo, as did Superior Court, that
Adams' application for reduction of sentence is not time
barred under Superior Court Criminal Rule 35(b), we
address Adams' contentions on the merits. See Gaines v.
State, Del. Supr., 571 A.2d 765 (1990). [*3] First, Ad-
ams contends that at the time of the plea colloquy, the
trial court was required as a matter of law to advise and
warn Adams that one of the consequences of an entry of
a plea of guilt was that the court might, in imposing sen-
tence, invoke the provisions of 11 Del. C. § 4204 and, in
particular, subsection (k) thereof, which provides:

1991 Del. LEXIS 66, *

The court may direct as a condition to any sentence of imprisonment that the Department of Correction shall not permit an offender to be furloughed or be allowed to participate in work release or supervised custody outside the prison institution or facilities.

(The State concedes that Adams was not informed by the trial court at the time of the plea colloquy of the provisions of section 4204.) Second, Adams contends that because he did not expressly agree to a sentence which would include the conditions set forth in subsection (k) of section 4205, and his agreement with the State itself was silent in that respect, the sentencing court was "without authority" to invoke subsection (k) and the sentence imposed was involuntarily obtained and in violation of his federal constitutional rights of due process.

(5) We think the appropriate standard [*4] of review of an application for reduction of sentence which is out of time should be no less than the standard controlling a motion to withdraw a plea made after sentence is imposed. That standard is to grant relief only to correct manifest injustice, assuming a defendant can show error in the plea colloquy to defendant's prejudice. Allen v. State, Del. Supr., 509 A.2d 87, 88 (1986). In Allen, the trial court was found to have committed a" technical error" by misinforming defendant as to the maximum sentence he could receive [by overstating the maximum term of incarceration possible under the law and then sentencing defendant to a period which was less than the maximum term.] However, we held that defendant was not entitled to collateral relief for lack of showing of prejudice. We found defendant's claim of prejudice to be not only improbable, but suspect, because not asserted until almost two and a half years after defendant entered his plea. Id. at 89. There, defendant sought to withdraw his plea; here, defendant seeks only a reduction in his sentence for the court's failure to inform him of its authority in later imposing sentence to deny work release or supervised [*5] custody during his period of incarceration.

(6) Here, the alleged error in the plea colloquy does not relate to a direct consequence of Adams' plea of guilty, that is, any error in "the full possible range of the sentences" permitted by statute, Wells v. State, Del. Supr., 396 A.2d 161, 162 (1978). The alleged error relates to a collateral consequence of the plea, whether he would be permitted to participate in work release or supervised custody. Cf.    Villa v. State, Del. Supr., 456 A.2d 1229, 1232 (1983). We think it patently clear that the trial court's exercise of its discretionary authority to permit or deny work release or supervised custody concerns collateral matters which are not a direct consequence of a plea. See  DiStefano v. Wilson, Del. Supr., 566 A.2d 1, 5, n.4 (1989). Thus, we hold that the trial court was not required as a matter of law in accepting defendant's plea to advise and warn defendant that one of the consequences of his entry of a plea of guilt was that the court mat invoke the provisions of 11 Del. C. § 4204(k) at time of sentencing and deny Adams the privilege of work release or supervised custody.

(7) Adams' remaining argument for sentence [*6] reduction is equally without merit as a matter of law. The court, in imposing sentence, was free to reject any recommendation contained in the parties' plea agreement, see Cassidy v. State, Del. Supr., No. 286, 1989, Moore, J. (Aug. 8, 1989) (Order), and there is no constitutional requirement that "a court adhere to the terms of a plea agreement." Jones v. Petrovsky, 631 F.2d 595, 597 (8th Cir. 1980).

NOW, THEREFORE, it being manifest on the face of appellant's brief that the appeal is without merit, IT IS ORDERED that the judgment of Superior Court is

AFFIRMED.

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2006, I electronically filed the attached documents

with the Clerk of Court using CM/ECF. I also hereby certify that on December 11, 2006, I have

mailed by United States Postal Service, the same documents to the following non-registered

participant:

James Eaves
SBI No. 00306218
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date:  December 11, 2006